[L. A. No. 1379. Department Two.—September 7, 1905.]

## HENRY J. KRAMER, Respondent, v. CITY OF LOS ANGELES, Appellant.

MUNICIPAL CORPORATIONS—SEWERS AND DRAINS—POWER OVER STREETS—DRAINAGE OF STORM-WATERS ON HILL SECTION.—The power of a municipal corporation to construct sewers and drains is incident to its power to construct and maintain streets; and it has power to provide a complete system of drainage for the purpose of concentrating and controlling the storm-waters flowing from a hill section of the city through an arroyo while constructing and laying out streets therein.

ID.—USE OF PRIVATE PROPERTY—CONSENT OF LANDOWNERS—POWER OF CITY.—The city has power to condemn private property for such system of drainage; and the character of its construction as

being a public benefit and within the municipal power is not affected by the consent of the landowners to give and of the city to accept a right of way along the arroyo for such drainage, which the city might have purchased or condemned.

ID.—BENEFIT TO INDIVIDUALS.—The construction of the storm-drains across private property is none the less a public improvement because individual owners over whose land it was constructed were particularly benefited thereby.

ID.—LIABILITY FOR DAMAGES TO LANDOWNER—BURSTING OF DRAIN-PIPE —NEGLIGENCE OF CITY.—Where the drain-pipe was insufficiently constructed to withstand the pressure of the drain water when full, and such defective construction, combined with negligent allowing of the outlet of the drain to be clogged with débris, caused the bursting of the pipe on plaintiff's premises, which the city, after notice from plaintiff, neglected to repair or remedy in any manner, the city is liable to plaintiff for all damages resulting to his premises, property, and business by reason of such negligence.

ID.—NOTICE OF OBSTRUCTIONS TO OUTLET OF DRAIN—QUESTION SUGGESTED.—Though the question is suggested, without decision, it appears upon authority that the city is not entitled to notice of obstructions at the outlet of the drain-pipe before it becomes liable for damages resulting therefrom; but that the obstructions being open only to the employees of the city, it appears to be the duty of the city to anticipate the probability of such occurrences and to guard against them by occasional examinations and cleansings.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

W. B. Mathews, and Herbert J. Goudge, for Appellant.

Bicknell, Gibson & Trask, and Dunn & Crutcher, for Respondent.

LORIGAN, J.—This action is brought by plaintiff to recover damages from the city of Los Angeles for injuries alleged to have been sustained by plaintiff through the negligence of the city relative to a drainage conduit constructed through his premises.

From a judgment in favor of plaintiff and an order denying defendant's motion for a new trial the city appeals.

The material facts, as found by the lower court, substantially stated, are: That prior to the year 1883 there existed

in the city of Los Angeles a small ravine, or arroyo, known as the "Arroyo de los Reyes," which began in the hilly section of the northwestern portion of said city at a point north of the intersection of Second and Fremont streets, and ran thence in a southerly direction through, along, and across the public streets of said city, and through and across private property, to a point south of the intersection of Eighteenth and Figueroa streets; that said arroyo, by means of its branches, tributaries, and the contour of the ground in said hill section of the city, received, collected, and carried off a large portion of the storm-water naturally falling in said hill section, and delivered the same to and upon the public streets and private property of said city; that in 1883 or 1885 the city, for the purpose of confining said surface-waters falling and accumulating in said hill section and flowing in said arroyo, constructed in said arroyo at the places where it crossed the public streets a thirty-two-inch cement pipe or main, and also constructed in said arroyo from a point in said hill section near the corner of Second and Fremont streets to a point southerly and in the east line of Flower Street near Fifth Street, a forty-one-inch brick conduit; that thereafter a cement pipe of thirty inches in internal diameter was laid in said arroyo from the southerly end of said brick conduit to Ninth Street, a short distance north of the property of plaintiff; that there was also constructed in said arroyo from a point just south of plaintiff's property southerly to a point in Figueroa Street near its intersection with Eighteenth Street another cement pipe thirty inches in internal diameter, and terminating in a well constructed by said city in Figueroa Street, which well was by said city also connected, by means of a twenty-two-inch pipe, with another small well constructed by the city in Figueroa Street about fifty feet from the first one, and over these wells the city placed iron gratings flush with the surface of said street, said two gratings constituting the only outlets of said cement pipe; that portions of said cement pipe were constructed in said arroyo by and at the expense of the owners of the lots through which the same was laid, portions by the city at its own expense, and other portions at the joint expense of the city and the owners of the lots through which the same was laid; that in March, 1897, plaintiff and the owners of the lots next adjoining plaintiff

petitioned the city council to pipe that portion of said arroyo which ran across their respective lots, offering to pay one half of the cost thereof, and in November, 1897, said city, for the purpose of completing said storm-drain, which had already been constructed from a point in the hill section of said city within a short distance north of plaintiff's property, and from the south of plaintiff's property down to the southerly terminus of said drain in the wells in Figueroa Street, and for the purpose of carrying said storm-water therein, constructed across the property of plaintiff and the lots of the adjoining owners a cement pipe of thirty inches internal diameter, and so connected the same with the other portions of said storm-drain already completed that the same then constituted a closed conduit or storm-drain from a point in the hill section of said city to its southerly terminus or outlet in said wells in Figueroa Street near Eighteenth Street; that half the cost of construction through the property of plaintiff and through the adjoining lots was paid by the owners of said lots into the city treasury of said city; that subsequent to the completion of said storm-drain, and prior to November 17, 1900, plaintiff constructed upon his property a frame dwelling, described in the pleadings and known as "Kramer's School for Dancing," which on said last-mentioned date was being used, and had theretofore been used, by plaintiff as a residence and hall for conducting a dancing-school, and also for renting purposes for parties and entertainments; that subsequent to the construction through the property of plaintiff of said cement pipe, and prior to said 17th of November, 1900, the city, for the purpose of more effectually collecting and confining the storm-waters which fell and accumulated in said hill section of the city and ran through and over the public streets thereof, built and laid under the said public streets two other cement pipes or storm-drains, thirty inches in internal diameter, and connected the same with the first-mentioned storm-drain at or near the intersection of Second and Fremont streets, one of which laterals or tributaries extended in a northeasterly direction in said hill section, and the other in a northwesterly direction in said hill section; that said city at all times after the construction of said cement pipes or storm-drains has maintained the same under its supervision; that the portion of said pipe

so constructed under the building of plaintiff was negligently constructed and of improper, insufficient, and defective material, and was inadequate to withstand the pressure of the water which was intended to and did pass through the same; that just prior to November 17th defendant city negligently permitted said pipe and the outlet thereof to become partially clogged and stopped up with débris, and that by reason of the negligence of said defendant in the construction of said pipe and the defective character of the material used by said defendant in its construction, and by reason of its negligence in the maintenance of said pipe, the same on the 17th of November, 1900, broke at certain points underneath plaintiff's building, in consequence of which large volumes of muddy and oily water were discharged into the basement of said building; that immediately and on November 17, 1900, plaintiff notified the street department, the city engineer, and the mayor of said city of the breaking of said pipe and the condition of plaintiff's premises; that on November 21, 1900, he appeared before the city council of said city, convened in regular session, and informed said council of the breaking of said pipe and the condition thereof and the condition of his premises; that defendant wholly failed to take any steps or make any effort to repair said pipe or place the same in safe condition, and thereafter, on said 21st of November, 1900, in consequence of the broken condition of said pipe, the basement of plaintiff's building was again submerged with muddy and oily water. And the court found that plaintiff had been damaged in the sum of $2,613.86, injuries sustained by the sinking of the foundations of his building, injuries to his furniture contained therein, and loss resulting to his business.

Upon this appeal appellant attacks practically all of the findings made by the court upon the ground that the evidence is insufficient to justify them.

We do not deem it necessary to consider this attack except as to a few of the main findings. As to the others, it is sufficient to say that we have given them careful attention, and while it must be conceded that some of them could have been better and more satisfactorily supported by evidence which, from the nature of the case, was accessible, yet we cannot say, that a reasonable consideration of such evidence as was ad-

dressed to them warrants the claim of appellant that it was insufficient to sustain them.

Referring now to the principal findings attacked.

It is insisted that the evidence was insufficient to justify the finding that the city constructed the portion of the pipe lying across the property of plaintiff and connecting it with the storm-drain already constructed.

Aside from such facts as are contained in the recited findings, the evidence shows that the pipe which was constructed across the premises of plaintiff was designed as, and was a portion of, a conduit system practically constructed by the city at its own expense, or conjointly with the owners of property through which the conduit ran, for the purpose of draining, as far as its capacity would do so, a portion of the hill section of the city and relieving that portion of the city south of said hill section from the burden of the storm-waters. This system, save the laterals in the hill sections, had been completed, including the outlet on Figueroa and Eighteenth streets, along the arroyo north and south of the property of plaintiff and that of a few others adjoining him at the time they applied to the city to complete the portion through their property. When this application was filed with the city council in which plaintiff and his co-petitioners offered to pay one half of the expense of construction (the city having refused to bear more than one half), that body took the matter entirely in charge and ordered a contract for the construction of the cement pipe across the property of plaintiff and his co-petitioners to be made between the city and W. A. Frinck. This contract was approved by the city attorney, signed by the mayor, and the contractor Frinck constructed the pipe in question, which being completed, the city paid the contract price; the plaintiff and his neighbors paying into the treasury one half thereof. Plaintiff was not consulted as to the size, materials, or laying of said pipe, or anything relating to it. The city controlled the entire matter.

It thus appears from the evidence that the city assumed the power to, and in fact did, contract for the construction of the conduit in question. But it is contended by appellant, and its objection to the sufficiency of the finding is grounded mainly on that proposition, that while the city entered in fact into the contract for the construction of this portion of

CXLVII. Cal.—43

the conduit, and did construct it, yet its act in that regard was *ultra vires* and void; that the construction of this conduit was an improvement in private property, and that the city had no power or authority to build a pipe-line, or storm-drain, for the benefit of the owners of private property.

We cannot agree with this position of appellant. It is true, as suggested by appellant, that a municipal corporation has no power to construct upon private property a pipe or conduit for the sole purpose of relieving the property-owner of the inconvenience or danger caused by the existence thereon of a natural watercourse or drain. But this was not the purpose of the construction of the conduit over plaintiff's premises. It was for the purpose of completing a drainage system mainly constructed by the city, and used by it to concentrate and control the storm-waters flowing from the hill section of the city as far as the system was capable of doing so, and that the municipality had power to provide a complete system for that purpose we do not think open to question. The power of the municipality to construct sewers and drains is derived from its authority to construct and maintain streets. It is not necessary that express power should be conferred by the charter for the former purpose. Without any special grant such power is regarded as incident to the general and express power to construct and maintain streets. (Dillon on Municipal Corporations, secs. 805, 807; 10 Am. & Eng. Ency. of Law, 2d ed., p. 237.)

The city when it commenced the improvement of the hill portion of the city—to construct and lay out streets therein—was confronted with the necessity of taking care of the storm-waters which fell in that section of the city, and as no limitation and restriction was imposed upon it under the charter, it had the right to make such provision for their disposition as in its judgment was best. It can hardly be questioned that for such purpose it might have constructed a sewer or drain in the public streets running in the same general direction as the course of the arroyo. And if, in the exercise of its discretion, there was an opportunity afforded it of constructing a sewer or drain over private property, we do not see how any valid objection could be presented against its doing so. The power existing, the exercise of it is left to the discretion of the municipality. If necessary, a right of

way for such purpose might have been condemned by the city along the arroyo. And if the city saw fit, to avoid damaging its streets by tearing them up to construct a storm-drain therein, or to avoid the expense of condemning a right of way through private property for that purpose, to accept from the property-owners a natural and convenient way along the arroyo, and construct its storm-drain therein, we do not see how this construction can be said to be *ultra vires*. To have constructed the drain in the public streets or under condemnation proceedings would have been for the public benefit and in the exercise of its municipal power. The character of the construction, as being a public benefit and within its municipal power, is not affected by the circumstance that the owners of land along the arroyo consented to give, and the city accepted, a right of way which it might have purchased or condemned. Nor was the construction of the portion of the storm-drain across plaintiff's property any the less a public improvement because its construction at that time only involved the premises of plaintiff and those of his neighbors, and was of particular benefit to plaintiff. The construction of this portion constituted the completion of the system, and as the municipality had the power to construct the whole storm-drain, it necessarily had the power to construct every part of it. There is no doubt that the construction of the conduit through plaintiff's premises was a benefit to him. But so was the construction of the entire system of benefit to each particular portion of property through which it was constructed, and in determining benefits the system in its entirety must be considered. The benefit to plaintiff was no greater, when the portion on his land was constructed, than it would have been if the entire drain had been constructed at one time, and as its entire construction was a public improvement which the city was authorized to make, it is of no consequence that particular benefit resulted to plaintiff through its completion.

It is not necessary in order that the use may be regarded as public that the whole of the community or any large portion of it may participate in it. If the drain be of public benefit, the fact that some individuals may be specially benefited above others affected by it will not deprive it of its public character. (*Ross* v. *Davis*, 97 Ind. 83.) Many other con-

siderations are urged by respondent why the construction of the entire system of storm-drainage along this arroyo was a proper exercise of municipal power—the growth of population in the section of the city traversed by the arroyo, and the construction by the city of streets across that stream from the hill section to Eighteenth Street; the placing of pipes under those streets at such intersections and the filling in of the remainder of the bed of the stream; the liability of the existence of nuisances created by stagnant pools formed thereby in a thickly settled portion of the city, and which would be a menace to public health and safety; and the actual existence of such a condition in the open portion of the arroyo on plaintiff's property near the public highway, a condition claimed to have been occasioned through the construction of the conduit by the city above and below his property, and for which condition neither himself nor the adjoining proprietors were responsible, and the removal of which by completing the conduit through his premises was a municipal duty and public benefit.

We do not discuss these suggestions, satisfied that, under the power to construct and maintain streets, the city in making such improvements in the hill portion thereof had a right to construct and adopt the system of which the conduit through plaintiff's land constituted a portion for the purpose of disposing of the storm-waters existing, at least in the hill section.

A general power to construct and maintain streets is sufficient authority to authorize a municipality to construct a sewer to carry off storm-waters. (*McGuire* v. *City of Rapid City*, 6 Dak. 346, [43 N. W. 706].)

There are only two other findings which require particular mention.

The plaintiff based his claim for damages resulting from the breaking of the pipe constructed by the city through his premises upon two grounds,—1. That the pipe was constructed in such manner and of such materials that it was incapable of withstanding the pressure of the water which was intended to and did pass through it; and 2. That the city was negligent in allowing the outlet of the conduit to be partially clogged and stopped up with débris so as to impede the passage of the water, thereby increasing the pressure upon

that portion of the pipe underneath his building. These findings are challenged by appellant as not sustained by the evidence.

An examination of the record, however, satisfies us that there was sufficient evidence to sustain the findings upon both points.

The pipe laid upon plaintiff's premises was constructed of cement, and the evidence clearly shows that it burst from the internal pressure of the water upon it. As to the strength and sufficiency of such pipe to withstand water pressure (referring to the testimony of some of the witnesses) the expert Purcell, called for plaintiff, testified that "the cement pipe practically will not carry any pressure at all, and it is considered to be impracticable to put more than eight feet head on it." Another one of plaintiff's experts, Koebig, testified that when a cement pipe is bedded and tamped it could not be subjected to a pressure over ten feet, that "the breaking strength really is between eight and ten feet, the safety. That is the pressure which the pipe should be subjected to and not more." Wolbrecht, one of the expert witnesses for defendant, characterized such pipe as "wholly unfit for water pressure." The pressure upon this pipe across plaintiff's premises was estimated by the expert witnesses for plaintiff to be approximately seventy-five feet; that the outlet at Figueroa and Eighteenth streets, being covered with iron grating, did not materially decrease this pressure, even when the outlet was not clogged with débris; that under the most favorable circumstances pressure would be exerted upon the pipe on plaintiff's premises which it was entirely inadequate to withstand. It was agreed by the same character of witnesses (expert) called by defendant that the pressure on said pipe would be seventy-five feet, if the outlet was stopped with débris, but that as constructed, if the outlet was unobstructed, the pressure would be from nine to ten feet. These estimates were given on the assumption that the pipe was full of water, which the testimony showed was liable to happen in cases of ordinarily severe rainfalls in that vicinity, and which was the case when the pipe in question burst.

This testimony bore upon the question of the sufficiency of the pipe as constructed to stand, when full, the ordinary pressure of the water intended to pass through it if the outlet was

unobstructed. As to the sufficiency of the evidence to show that the outlet on Figueroa and Eighteenth streets was clogged up at the time the pipe across plaintiff's premises burst. It appears from the testimony that there were taken out of the well at the outlet the day after the storm, during which the pipe in question broke, large quantities of branches and several big rocks, and that the bars which covered the thirty-inch cement discharge pipe where it entered into the well on the east side of Figueroa Street, and the bars which covered the twenty-two-inch pipe from that well to the outlet on the west side of Figueroa Street were so clogged up that, as the witness St. Martin said, they were "full of stuff; had to pull it out with a shovel; that is, had to get it away from the bars; in the condition it [the well] was in a small amount of water could run through there. It necessarily lessened of course the capacity." We do not perceive from the record that there was any testimony save that of this witness as to an actual examination of the condition of the outlet after the storm during which the pipe in question broke, and his examination showed it much obstructed at that time. There was water running through this conduit during the entire year, which would naturally carry more or less débris, to find lodgment against the bars at the outlet, and impede the flow of the water in the event of a storm. It is conceded by all the witnesses in the case that the clogging of this outlet would throw a pressure upon the pipe on plaintiff's premises which it was not constructed to withstand, and the fact that it broke when the first storm came would be some evidence of itself that the outlet was then clogged and impeded. There was evidence, too, that as to the grating which covered the well, and which was intended to be a relief to the flow of water there, the débris usually carried or flowing down the street in which the well was located—leaves, straw, filth, etc.—had a natural tendency to clog this grating up, and so create a solid obstacle against the relief to the flow of the water from the outlet, which it was intended in case of a storm to afford. There is some evidence in the case which, while not showing positively that that was the condition of the grating at the time of the storm, yet strongly indicates that it was, and this evidence was of such character that the court might reasonably infer that this was the condition of the grating at that time. As we

have said, the only evidence of actual inspection of the outlet to ascertain its condition was made by the witness St. Martin. It is not pretended that any officer or employee of the city at any time made any inspection of the outlet to ascertain whether it was obstructed or not, either before or after the storm. It is urged by the appellant, against the testimony of the witness St. Martin, and other testimony to the same point, that it only tended to show the condition of the outlet after the storm. But evidence showing the condition of the outlet immediately after the storm subsided, it being in the nature of things impossible to observe it while the storm prevailed, was competent evidence from which a reasonable inference could be deduced that the condition as disclosed then existed at and prior to the time of the storm. (*District of Columbia* v. *Gray*, 6 App. D. C. 319.) While there is some additional evidence in the record on this point, we think we have called attention to sufficient of it to meet appellant's objection.

Taking, then, the evidence in the case—which we have referred to in a general way—addressed to the findings of fact which the appellant attacks, we think it entirely sufficient to support both of them. It is not pretended but that the breaking of the pipe was occasioned through the internal pressure of the water. All the witnesses in the case agreed to this. Independent of any question whether there was an obstruction of the outlet at the time the pipe broke, the court was warranted, from the evidence adduced by plaintiff's witnesses, in finding that the pipe, as constructed by the city, was inadequate to withstand, when full, the mere pressure of the water which it was intended to carry. This finds ample support in the testimony of the experts for plaintiff, and the fact that the pipe broke under pressure of the water flowing freely (if appellant's claim that the outlet was unobstructed were true) would confirm the testimony of these witnesses that it was inadequately constructed to withstand that mere pressure. And that the court was warranted in finding that the outlet was in an obstructed condition is sufficiently clear from the evidence upon that point to which we have referred.

These constitute the only findings which we think require discussion. The others which are challenged are, in our opin-

ion, as we have said, sufficiently sustained by the evidence, and particular reference to them we think unnecessary.

There is but one other additional point in the case made by appellant, aside from the matter of damages, which requires mention.

The appellant does not question the rule that a municipality, when the construction of sewers or drains is within its power, is liable for injuries such as are claimed to have been sustained by plaintiff, and which are the result of negligence in the construction of such work, or for failure to keep the same, when constructed, in proper repair or free from obstruction. It is, however, insisted that it is the rule that a city is not chargeable with negligence, if permitting such obstruction, until after notice of its existence, and that in the case at bar it does not appear that the appellant had any notice that the outlet on Figueroa and Eighteenth streets had become stopped up. This point of appellant's, it is claimed by respondent, is of no moment as affecting the liability of the city in the present case, because, it is insisted by him, that this element of negligence in permitting the outlet to become stopped up may be eliminated, as the evidence still shows, from the testimony of appellant's own witnesses, that appellant was negligent in constructing the conduit across plaintiff's premises of material unfit to bear the ordinary pressure of the water flowing through it without any stoppage of the outlet. Whatever merit there might be in this claim, the force of it is lost under the finding of the court that the injury to plaintiff was occasioned not purely through the negligent construction of the conduit in question by appellant, but that this, combined with its negligence in permitting the outlet to be obstructed, occasioned the damage.

Upon the matter of notice, if the rule contended for by appellant applies, it appears, in our judgment, that the city did have notice sufficient to move it to an examination of the outlet to ascertain its condition and remove the obstructions. The flooding of plaintiff's premises by the breaking of the pipe occurred during the first storm mentioned in the findings; the second flooding some five days after the first. When the flooding from the first storm occurred, the plaintiff immediately notified the street department of the city, and the city engineer and mayor, of the broken condition of the

pipe and the condition of his premises as a result thereof.
He subsequently appeared before the city council in open
session and notified the members thereof of the condition of
things.   Although thus notified, the officials of the city took
no steps to actually repair the sewer, or to investigate the
condition at the outlet, and plaintiff's building was after-
wards flooded by the second storm, the water remaining in
it for about eighteen hours.   From the evidence in the case
the court was warranted in finding that the greater damage
plaintiff sustained was occasioned by the second storm, oc-
curring after the city had ample notice and had failed to act
on it.   We reach this conclusion without passing upon the
point made by respondent, and which appears to be sustained
by ample authority, that the city was not entitled to notice of
obstructions at the outlet before it became liable for damages
resulting therefrom; that it is the duty of a city to anticipate
the probability of such occurrences, and to guard against
them by occasional examinations and cleansings.   (10 Am. &
Eng. Ency. of Law, 2d ed., p. 246; *District of Columbia* v.
*Gray,* 6 App. D. C. 314, 319; *Fort Wayne* v. *Coombs,* 107
Ind. 75, [7 N. E. 743]; *Schumacher* v. *City,* 166 N. Y. 103,
[59 N. E. 773].)   The general rule on this subject is stated
in the *District of Columbia* v. *Gray,* 6 App. D. C. 314, 319, in
which obstructions similar to those complained of in the case
at bar were involved.   "But in a case like the present there
seems to be no ground for the application of the doctrine of
notice in its ordinary sense.   Ordinarily, and in the nature
of things, only the officers and agents of the municipality
could know of such an obstruction as that of which complaint
is here made.   There could be no passer-by who could
give the information.   The location of the obstruction was
open only to the employees of the municipality, and it was
their duty to inspect it from time to time and ascertain the
fact that no obstruction existed.   Only by such inspection was
it possible ordinarily to ascertain the existence of such ob-
structions, and if that work of inspection was neglected by
the municipality, it has no right to require that it must have
notice from some other source.   Its neglect of duty cannot be
made the basis of exemption from liability."

As to the amount of damages.   Aside from injury to plain-
tiff's building from settling, the amount of damages allowed

for which is not questioned, the court allowed plaintiff damages for injuries to furniture and utensils, and for loss of the use of his building, the allowance of portions of which amounts appellant questions. Plaintiff was the only witness as to these damages, and we think his testimony justified the allowance. As to the damages to his furniture and utensils his statement was one of fact, not of opinion as insisted by appellant.

As to the damages to his business. Plaintiff was also the only witness on this point. Counsel assume that in his claim for such damages plaintiff was seeking to recover profits which he lost. We do not so understand his claim. It was for the loss of receipts for rental of the dancing-hall, and loss of engagements for dancing classes. These were engagements which he had actually made, and which, on account of injury to the dancing-hall, had to be abandoned. The only expenses he had were the running expenses of the hall which he had all the year round. As the matter of profits did not seem to be involved in this claim for damages, appellant's point that the evidence did not warrant its allowance is without merit.

Various other points are made upon this appeal which we do not touch on. They relate mainly to claims that the court failed to find on several material issues or found outside the issues in the case. We do not think that any of them are well taken.

The judgment and order are affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.