[Sac. No. 2659. In Bank.—October 1, 1919.]

## CITY OF MADERA (a Municipal Corporation, etc.), Respondent, v. ALEX BLACK, Appellant.

[1] TAX—MEANING OF.—A tax, in the general sense of the word, includes every charge upon persons or property, imposed by or under the authority of the legislature, for public purposes.

[2] IMPOST—MEANING OF.—The word "impost," in its broader sense, means any tax or tribute imposed by authority, and applies as well to a tax on persons as to a tax on property.

[3] TOLL—MEANING OF.—A toll is a sum of money for the use of something. The word is generally applied to the consideration which is paid for the use of a road, bridge, or the like, of a public nature.

[4] SEWAGE RATE—NATURE OF CHARGE—ACTIONS INVOLVING LEGALITY —EXCLUSIVE JURISDICTION OF SUPERIOR COURT.—A monthly sewage rate imposed by municipal ordinance upon private property owners for the use and connection of their dwellings with a city sewer system is a tax, impost, and toll, and any case in which the legality of such a charge is involved is within the exclusive jurisdiction of the superior court.

[5] ACTION FOR SEWER RATES—CERTIFICATION OF CASE TO SUPERIOR COURT—DUTY OF RECORDER.—Where an action to recover such sewer rates was begun in a recorder's court, and a verified answer was filed showing that the determination of the action involved the legality of a tax, impost, and toll, the recorder should have certified the case to the superior court as provided by section 838 of the Code of Civil Procedure.

[6] WAIVER OF OBJECTION TO JURISDICTION.—If in such action no objection to the jurisdiction is made either in the justice's court or in the superior court on appeal to that court where the case was again tried, and an appeal is taken from the superior court to the supreme court, the appellate court will consider all objections to jurisdiction as having been waived, and entertain the appeal in the same manner as if the action had been begun in the superior court.

[7] MUNICIPAL CORPORATIONS—CHARGE FOR SEWER CONNECTIONS— REVENUE FOR GENERAL PURPOSES—VOID ORDINANCE.—A municipal corporation which is given power to construct, establish, and maintain drains and sewers has no power to construct and maintain a sewer system to raise revenue for general purposes by means of a toll or tax for the privilege or right to use the sewer for the purposes for which it was constructed, and an ordinance which imposes sewer rates for purposes additional to that of paying the expenses of repairs and maintenance is void.

APPEAL from a judgment of the Superior Court of Madera County.   J. J. Trabucco, Judge Presiding.   Reversed.

The facts are stated in the opinion of the court.

J. J. Coghlan for Appellant.

F. A. Fee for Respondent.

SHAW, J.—Madera is a city of the sixth class.   In the year 1909 it acquired, and it has ever since maintained, a system of sewers extending through certain of its public streets.   Its ordinances required that all dwelling-houses situated on lots abutting on a sewered street should be connected with such sewer, and forbade the disposal of sewage in any other manner.   The defendant then owned and ever since has owned and occupied a dwelling-house on one of said streets, and in compliance with the ordinance he put in the sewer connections and has ever since used the sewer to carry the sewage from his house.

In February, 1914, the city duly adopted an ordinance imposing a "monthly sewage rate or charge for the use of and connection with the sewer," the rate for each dwelling-house occupied by a single family being one dollar, payable in advance on the first day of each month.   On May 16, 1916, it duly adopted another ordinance, the same as the former one, except that it provided that the charge should be deemed a debt due to the city from the persons whose duty it was to pay the same, collectible in a civil action by the city, and that for a failure to pay the charge when due the additional sum of ten dollars should be added to the charge, as a penalty for the delinquency.   The defendant failed to pay the charge for thirteen months in succession, beginning June 1, 1915, and ending June 30, 1916.

This action was begun on June 26, 1916, in the recorder's court of Madera, to recover the sum of thirteen dollars for the sewer rates or charges due for said thirteen months, and ten dollars for the penalty imposed by the last-mentioned ordinance for the delinquency for June, 1916.   The complaint alleged the facts as above stated and set forth said ordinances in full.   The defendant demurred to the complaint on the ground that the case involved the possession of real property

and the legality of a tax, impost, assessment, toll, or municipal fine, and, consequently, that it fell within the exclusive jurisdiction of the superior court, and the recorder's court was without jurisdiction thereof, under the provisions of the constitution. (Const., art. VI, sec. 5.)

The demurrer was overruled and the defendant filed an elaborate answer, duly verified, in which he denied the validity of the said ordinances and of the rates or charges attempted to be imposed thereby, and alleged facts tending to show that the said rates or charges were not reasonable, but were extravagant and exorbitant and were imposed for the purpose of raising revenue to defray the general expenses of the city government. The case was tried and judgment was given for the defendant in the recorder's court. From that judgment the plaintiff appealed to the superior court, where the cause was tried again, resulting in a judgment for the plaintiff in the sum of thirteen dollars. The defendant appeals from the latter judgment.

Both in the recorder's court and in the superior court the parties agreed upon the facts. In the superior court the agreed statement used in the recorder's court was accepted as true for the purposes of the trial in the superior court and by stipulation the case was submitted thereon, "saving and excepting to each party herein, respectively, all of his or its objections, exceptions and remedies as to questions of law." It does not appear anywhere in the record that in the superior court either party made the specific objection that the superior court was itself without jurisdiction because of the fact that the case had come to it for determination by the process of appeal, instead of by the process of certification by the recorder, as provided by section 838 of the Code of Civil Procedure in cases where it appears by the verified answer of the defendant that the determination of the action will necessarily involve the legality of a tax, impost, assessment, toll, or municipal fine, or the possession of real property. Upon filing the verified answer in the recorder's court, the defendant there demanded that the case be certified to the superior court as provided in that section, but the demand was refused.

Where, in such a case, the parties appear in the superior court and there submit the case to its determination on the merits, without there making the objection that the supe-

rior court is without jurisdiction of the action, because of the aforesaid irregular manner in which it has reached that court, and an appeal is thereafter taken to this court from the judgment given in the superior court, this court will consider the particular objection above noted to have been waived, so far as it is possible for the parties to waive it, and will treat the case as if it had been originally commenced in the superior court and the parties had appeared without process and submitted the cause for decision on the merits. (*Santa Barbara* v. *Eldred,* 95 Cal. 381, [30 Pac. 562]; *Hart* v. *Cornell etc. Co.,* 103 Cal. 140, [37 Pac. 196]; *De Jarnatt* v. *Murphy,* 132 Cal. 700, [64 Pac. 1090].) The result in this case is that if we find that the action was of a character originally cognizable exclusively in the superior court, we will consider the appeal on the merits, as if it had been begun in that court; but if we find that it was an action of which the superior court had not original jurisdiction, and consequently one in which an appeal would not lie to the supreme court or to the district court of appeal, we will dismiss the appeal on the ground that we have no jurisdiction of such attempted appeal. The respondent moves to dismiss the appeal on that ground.

It follows that the first question for our consideration is the one of jurisdiction, that is to say, the question whether the recorder's court or the superior court is the court having original jurisdiction of the case. If we consider that the determination of the case did involve the legality of a tax, impost, assessment, toll, or municipal fine, or the possession of real property, we will not dismiss the appeal, but will inquire further whether or not the decision of the superior court was correct, and whether the tax, impost, assessment, toll, or municipal fine, as the case may be, is valid; if we conclude that such legality or possession was not involved, we must dismiss the appeal.

The findings in the superior court state other facts material to the argument of the respondent. In 1908 a private corporation, the Madera Sewerage Company, owned a system of sewers extending over a part of the public streets of the city. The city determined to acquire and construct a sewer system to be operated by the city itself. In pursuance of this plan it issued and sold city bonds amounting to twenty-five thousand dollars. In 1909, with the proceeds thereof it purchased the

sewer system of the Madera Sewerage Company for eighteen thousand dollars and with the remainder constructed the required extensions. In November, 1909, it adopted an ordinance imposing monthly charges for the use of and connection with said sewers, upon all persons having property so connected, including the plaintiff as aforesaid, the charges being substantially the same as those fixed in the later ordinances above mentioned. Ever since 1909 it has collected the charges so imposed and placed the money in its treasury to the credit of the fund called the ''Sewer Fund.'' The total amount so received from November, 1909, to July 20, 1916, was $40,734.92. Of this money $21,775 has been transferred to the general fund of the city and expended for general purposes; $8,910 has been transferred to a fund designated as the ''Water Fund'' and used for the purposes for which that fund was created; and $1,234.37 has been transferred to the ''Sewer Bond Redemption and Interest Fund,'' in which is kept the money raised by general taxes levied as required by law to pay the interest and principal of the bonds aforesaid. The remainder, $8,615.55, has been expended in some manner not specified in the record. It may have been expended for expenses of operating and maintaining the sewer. It also appears that the receipts from sewer rates amounted to $7,253.90 for the year ending June 30, 1915, and to $7,277.85 for the year ending June 30, 1916.

[1] A tax, in the general sense of the word, includes every charge upon persons or property, imposed by or under the authority of the legislature, for public purposes. (*Perry* v. *Washburn,* 20 Cal. 350; *People* v. *McCreery,* 34 Cal. 454.) [2] The word ''impost,'' in its broader sense, means ''any tax or tribute imposed by authority, and applies as well to a tax on persons as to a tax on property.'' (*Smith* v. *Turner* [*Passenger Cases*], 48 U. S., at p. 407, [12 L. Ed. 702, see, also, Rose's U. S. Notes].) [3] A toll is a ''sum of money for the use of something, generally applied to the consideration which is paid for the use of a road, bridge, or the like, of a public nature.'' (Bouvier's Dictionary, title ''Toll.'') The money for which the plaintiff sued was a charge upon persons; it was imposed by the legislative authority of the city of Madera for public purposes, and under these definitions it was a tax; also, it was a tribute or contribution required by

legislative authority and to be used for public purposes, and so comes within the definition of the word "impost." It may also be considered as a charge made for the use of the sewer constructed and acquired by the city. If so, it would come within the definition of a toll as fully as would the charge for the use of a public street or road. Such tolls are imposed by or under the sanction of public authority. In this case the charge was directly imposed by the ordinance and, if it is a toll, it comes within the constitutional provision.

The general purpose of that provision obviously is to give to the sovereign power of the state, whether exercised generally or locally, the protection of having the legality of any exaction of money for public uses or needs cognizable in the first instance in the superior courts alone. In view of this purpose, it is apparent that the words used should be applied in their broadest sense with respect to moneys raised for public purposes or needs. **[4]** The conclusion necessarily follows that the particular charge here involved comes within the constitutional provision and that any case in which the legality of such a charge is involved is within the exclusive original jurisdiction of the superior court. Upon the filing of the answer it fully appeared that the legality of the charge was involved in the action. **[5]** The recorder should thereupon have certified the papers and transferred the cause to the superior court. **[6]** As we have said, the particular objection that the superior court had no jurisdiction was not made when the case reached that court, and as the case was within its original jurisdiction, the superior court properly took jurisdiction and proceeded to determine the case on its merits. The result is that the motion to dismiss the appeal to this court was not well taken and the same is hereby denied. We find it unnecessary, in this connection, to consider the meaning of the term "municipal fine" as used in the constitutional provision. We proceed to the question whether or not the charge was lawful and valid.

The respondent's main argument is that the charge is not made against property and is not a sum exacted as payment of a license fee for any privilege or right given to the occupants of houses along the sewer, but that it is an ordinary debt owed by the defendant to the plaintiff for services performed by plaintiff for the defendant in carrying away sew-

age from his premises. There can be no doubt that it is not a charge levied upon property as such. None of the successive ordinances imposing the charge purport to make the same a lien upon property of any description. The respondent cites *In re Zhizhuzza,* 147 Cal. 328, [81 Pac. 955], in which this court held that an ordinance of the city of Oakland providing that no one should collect garbage from the residents of the city except the city itself, and fixing a sum per month which the residents were required to pay for the services of the city in collecting such garbage, was a valid police regulation for the protection of the public health, which the city, under its charter and under section 11, article XI, of the constitution, had the power to make. The ordinance was attacked by the persons who had previously collected garbage from the residents under private contracts. The question whether the charges imposed were in the nature of taxes, imposts or tolls was not presented or decided. We do not perceive that this case has any bearing upon the question here presented. It does not appear that the ordinance prohibited the residents from themselves carrying away the garbage from their respective residences. Their rights and views concerning the nature of the charge were not involved.

If the argument of the respondent, that it is a debt, is tenable, it must be upon the theory that the city, in its proprietary capacity, is the owner of the sewer and that it was operating the same in that capacity. This necessarily assumes that the city, by its organic law, was authorized to construct and operate sewers in its proprietary capacity for profit or otherwise, as a private person might do. It is the settled law of this state and the general rule everywhere that "language purporting to define the powers of a municipal corporation is to be strictly construed, and that any 'fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied.'" (1 Dillon on Municipal Corporations, sec. 89.) It is declared, "as a general and undisputed proposition of law, that a municipal corporation possesses and can exercise the following powers and no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incident to the powers expressly granted; and, 3. Those essential to the declared objects and purposes of the corporation—not simply

convenient, but indispensable." (*Oro Electric Co.* v. *Railroad Commission,* 169 Cal. 477, [147 Pac. 122].)    The court in that case cited *Von Schmidt* v. *Widber,* 105 Cal. 151, [38 Pac. 682], and *Hyatt* v. *Williams,* 148 Cal. 585, [84 Pac. 41], both of which fully sustain the quotations above made.    Similar expressions are found in *San Christina etc. Co.* v. *San Francisco,* 167 Cal. 771, [52 L. R. A. (N. S.) 676, 141 Pac. 384] , *Connelly* v. *San Francisco,* 164 Cal. 105, [127 Pac. 834] , *Redondo Beach* v. *Cate,* 136 Cal. 146, [68 Pac. 586] , and *Low* v. *Marysville,* 5 Cal. 214.

Madera being a city of the sixth class, its powers are defined solely by our statutes.    Among those powers we find none authorizing it to acquire, construct, or operate sewers in its proprietary capacity for the purpose of obtaining revenue or profit therefrom.    It is given power "to construct, establish, and maintain drains and sewers."    (Deering's General Laws, p. 1122, sec. 862, subd. 5.)    It is also given the power to levy and collect street poll taxes.    (Ibid, subd. 7.)    But this is probably forbidden by section 12, article XIII, of the constitution, as amended in 1914.    It has power to impose dog taxes and ordinary property taxes assessed upon a valuation in the usual manner, and also to license for revenue and regulation all kinds of business carried on in the city and fix and collect the rates of license tax thereon.    (Ibid, subds. 8–10.)    It has been held that the power to construct and maintain sewers is possessed by cities, although not expressly conferred by any charter or statute, "as incident to the general and express power to construct and maintain streets."    (*Kramer* v. *Los Angeles,* 147 Cal. 674, [82 Pac. 334] ; *Harter* v. *Barkley,* 158 Cal. 745, [112 Pac. 556].)    **[7]**    But it is obvious that the power to construct and maintain sewers does not include authority to raise revenue for general purposes by means of a toll or tax for the privilege or right to use the sewer for the purposes for which it was constructed.    Such means of raising revenue is so unusual and extraordinary that it cannot be implied from the general grant of power to lay and maintain sewers.    In *Harter* v. *Barkley, supra,* the court decided that the power to lay and maintain sewers included authority, as incidental thereto, to impose a charge for the privilege of connecting a house with the sewer.    It may be that the power to maintain a sewer may carry by implication the additional

power to levy a monthly charge to raise money for the repairs and upkeep of such sewer. But the rates here imposed upon the sewer users were obviously for purposes additional to that of paying the expenses of repairs and maintenance. The facts found by the court show this conclusively. Substantially, the same sewer rates have been collected by the city continuously ever since the year 1909. The sum of $40,734.92 has been raised in this manner. More than three-fourths of this sum has been transferred to other funds and used for purposes other than repairs to the sewers and expenses of their maintenance. More than half of it has been paid out for the general expenses of the city government. It is not even made expressly to appear that any of it has been devoted to sewer repairs or maintenance. If any was used for extensions to the sewer system, such use was unlawful, for it cannot be doubted that the city has no power to lay taxes or tolls on those who may use the sewer, in order to obtain money to build sewers in other streets for the special benefit of other persons. The payment of the principal and interest of the bonds issued as aforesaid is to be paid out of money raised by a general tax upon property, as provided in the act authorizing their issuance. (Stats. 1901, p. 27, sec. 7; Stats. 1907, p. 611, sec. 3.) No money raised by sewer rates would be necessary to pay these bonds, or could lawfully be used in that manner. The city trustees must therefore be deemed to have known, long before the sewer-rate ordinances of 1914 and 1916, respectively, were adopted, that the rates established were far in excess of the needs for repairs and maintenance. Persons, even when acting officially, are presumed to intend the necessary consequences of their acts, especially if such consequences are known to them beforehand. It must therefore be presumed that the high rates were imposed in order to bring about the known and inevitable result—that is, the accumulation of a fund for the general benefit of the city and thereby enable it to fix a lower rate of taxes for general purposes. That the courts may make such inquiry, see *Dobbins* v. *Los Angeles*, 195 U. S. 239, [49 L. Ed. 169, 25 Sup. Ct. Rep. 169, see, also, Rose's U. S. Notes]. This would be an unjust discrimination and an unfair burden upon those who used the sewer, and it is clearly beyond any power possessed by the city. It follows that the charges were excessive and unreasonable. They were imposed upon the persons concerned without

their consent, and payment was practically compelled by means of penal ordinances authorizing the city officials to remove the sewer connection from any house if the rates were not paid therefor, declaring such house a nuisance and forbidding any person thereafter to occupy the same. A court cannot apportion the charge or ascertain and allow such portion as it might find reasonable, assuming, but not deciding, that the city, under its organic law, is authorized to impose regular charges for such repairs and maintenance. The entire charge must therefore be declared invalid. The judgment of the court below cannot be sustained.

The judgment is reversed.

Lennon, J., Wilbur, J., Melvin, J., Olney, J., Angellotti, C. J., and Lawlor, J., concurred.