[Civ. No. 17994. First Dist., Div. Two. Oct. 21, 1958.]

FRED L. MULLOY et al., Respondents, v. SHARP PARK
SANITARY DISTRICT, Appellant.

Ropers & Majeski, Robert F. Kane and J. Frank Coakley,
District Attorney (Alameda), for Appellant.

Applebaum, Mitchell & Bennett and Hagar, Crosby &
Rosson as Amici Curiae on behalf of Appellant.

Saul N. Ross for Respondents.

KAUFMAN, P. J.—Plaintiff Fred L. Mulloy, his wife,
Clarice, and plaintiff as guardian of his minor child Beverly,
filed a complaint setting forth two causes of action against the

defendant sanitary district. The first charges the defendant with the creation of a private nuisance on December 1, 1955, when the plaintiffs' home was flooded with sewer water and debris; the second charges the defendant with the improper construction, operation and maintenance of sewer line servicing the plaintiffs' home. The defendant sanitary district appeals from a judgment rendered on a jury verdict in favor of the plaintiffs. The following questions are raised by the appeal.

(1) Is a sanitary district liable for a private nuisance resulting from an obstruction in the sewer line which the district has failed to discover?

(2) If so, does the evidence here support the verdict?

The facts viewed most favorably to the plaintiffs are as follows: On December 1, 1955, the plaintiffs had lived for several years at 203 Manor Drive in Sharp Park in San Mateo County. Defendant, a sanitary district organized pursuant to Health and Safety Code, section 6400 et seq., operated a sewer system which serviced the plaintiffs' home. The system consists of numerous pipes of varying sizes running to a sewage treatment plant. The pipes themselves do not actually pass through the manholes, as a trough at the base of each manhole serves this function. Each manhole has two openings at the base, one for entry and one for discharge. There are approximately 500 manholes in the defendant's system. One of these manholes is located directly in front of the plaintiffs' home.

On December 1, 1955, the plaintiff came home from work about 5 p.m. He did not notice anything unusual about the manhole in front of his home or detect any unusual odors in the street. After dinner, the plaintiff heard gurgling in the bathroom. He went to investigate and saw airbubbles coming from the toilet. The bubbles stopped and he returned to the living room. Shortly thereafter the noises began again. The plaintiff returned to the bathroom and flushed the toilet. The water began to back up in the toilet and in the bathtub, soon flooding the bathroom and ultimately the other rooms in the house. About 4 inches of sewer water and debris was deposited throughout the house causing extensive damage. As soon as the plaintiff saw the water backing up, about 6:45 p.m. he called the Sharp Park Fire Department. Plaintiffs made several more calls to the fire department during the next 20 minutes, but did not call the defendant district. The superintendent of the defendant district was first notified of

the occurrence at about 7 p.m. by a plumber called by the plaintiffs and the fire department. When the defendant's employees arrived at approximately 7:10 p.m., most of the damage had been done and the water ceased coming from the manhole. Defendant's employees removed the cover and ascertained that the manhole was plugged and full of water. They inserted a steel rod into the manhole and dislodged a broom or mop wedged in the pipe. The broom or mop was wide enough to cover the mouth of the 6-inch pipe and had a broken handle about 18 inches long. The plaintiffs and a neighbor testified that there was other debris in the manhole, some of which was removed and some of which was washed away. One of defendant's employees and the plumber did not remember any additional debris. The time required to unplug the manhole was estimated from 5-15 minutes by the various witnesses.

Defendant's evidence indicated that it employed two men whose principal duties were the inspection and maintenance of the pump house, sewer lines and manholes. Occasionally, these men also performed routine installation and other services for the district. Under normal circumstances, a routine inspection of each of the 500 manholes in the district was made every 30 days. Unless some debris is found, a routine inspection takes about one minute and consists of lifting the manhole cover, which weighs about 60 pounds, and looking for trash, sludge, sticks, etc. Records are kept by the defendant of all inspections and maintenance work performed in the district. These records indicate that the manhole in front of plaintiffs' home was inspected on a two hour inspection tour November 30, 1955 (the day before the occurrence complained of) and no obstruction of the sewer was seen at that time. Peculiarly, defendant's records as to the inspection of this particular manhole are more detailed than its records about any other. The testimony of defendant's employees as to the precise route taken by them on November 30, 1955, is in conflict. It is clear however that neither employee descended into the manhole on November 30, 1955. The area covered by the November 30 inspection consisted of 50-60 manholes in an area of 2-3 square miles. Another employee of the defendant's testified that it would take 2-4 hours to conduct a routine inspection of this area if no difficulty or obstruction was encountered. Defendant's records also reveal two prior inspections of the line in question on July 16, 1955, and October

10, 1955. No plugs or obstructions were found on either of these occasions. Defendant's superintendent stated that it was good practice to conduct occasional flushings and cleansings of sewer lines and that men and equipment were available for this purpose. The practice, however, was not to flush the lines unless some obstacle was discovered and the line serving plaintiff's home had not been flushed prior to December 1, 1955.

It is apparent from the above that there is ample evidence to sustain the verdict. We need therefore to concern ourselves with the first and main question raised by this appeal.

Defendant argues that as a public agency engaged in a governmental activity it cannot be held liable in the absence of a special statute. However, we are here concerned with direct damage to real property, for which liability existed even at common law. (*Ambrosini* v. *Alisal Sanitary District,* 154 Cal.App.2d 720 [317 P.2d 33].) In this state it has long been recognized that a governmental unit is liable for creating and maintaining a nuisance. (*Phillips* v. *City of Pasadena,* 27 Cal.2d 104 [162 P.2d 625]; *Hassell* v. *San Francisco,* 11 Cal.2d 168 [78 P.2d 1021]; *Adams* v. *City of Modesto,* 131 Cal. 501 [63 P. 1083]; *Peterson* v. *City of Santa Rosa,* 119 Cal. 387 [51 P. 557].) We recently applied this rule to a sanitary district in the Ambrosini case, *supra.* In considering whether facts alleged are sufficient to constitute a cause of action in nuisance, the plaintiff must show that a legislative body has declared the condition complained of to be a nuisance. (*Vater* v. *County of Glenn,* 49 Cal.2d 815 and 820 [323 P.2d 85].)

 Section 3479 of the Civil Code, provides in part: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance." It cannot be questioned that the facts proved do constitute a nuisance within the above statutory definition. (*Adams* v. *City of Modesto,* 131 Cal. 501 [63 P. 1083].)

 Appellant contends that it cannot be held liable on the theory of negligence and hence the court improperly instructed the jury on this subject.

This contention is answered in *Kramer* v. *City of Los Angeles,* 147 Cal. 668 [82 P. 334] where the city was held liable for negligently allowing the outlet of a drain to be clogged

with debris, causing the bursting of a pipe on plaintiff's premises.

The jury here, under the evidence, was entitled to draw an inference of improper inspection of the sewer system and hence the appellant was guilty of negligence. Also under this theory appellant was not entitled to notice. (*District of Columbia* v. *Gray,* 6 App.D.C. 314 at 319.)

We conclude that the judgment finds support in the record before us on both the nuisance and negligence theories.

Judgment affirmed.

Draper, J., and Martinelli, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1958. Gibson, C. J., Shenk, J., and Traynor, J., were of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.