[Civ. No. 19033. First Dist., Div. One. June 19, 1961.]

RICHARD NGIM, Respondent, v. CITY AND COUNTY OF SAN FRANCISCO, Appellant.

Dion R. Holm, City Attorney, and Paul J. DiNoia, Deputy City Attorney, for Appellant.

John W. Collier, City Attorney (Oakland), and Mark B. Shragge, Deputy City Attorney, as Amici Curiae on behalf of Appellant.

Carroll, Davis, Burdick & McDonough for Respondent.

TOBRINER, J.—Appellant city urges two reasons why respondent's judgment for damages caused by the flooding of a store basement with sewage should not stand: first, the evidence did not support the jury's finding of appellant's general negligence; second, the case should not have been submitted on the theory of general negligence, but upon instructions which framed the requirements of the Public Liability Act. We have concluded for the reasons hereinafter set out that the evidence does sufficiently support the verdict on general negligence but that the act applied; that instructions should have been given pursuant to it, and that the error worked prejudice upon appellant.

The discovery of the loss which produced the damage in this case occurred on Monday, December 19, 1955, at about 8:30 a.m. when respondent, coowner with his brother of a grocery store at 4500 Third Street, San Francisco, found the basement of the store flooded with sewage that had emanated from a sewer owned and maintained by the city and county of San Francisco. As a result of the flooding, the department of health condemned merchandise stored in the basement. Upon the city's denial of his filed claim for compensation, respondent brought this action, which alleged that "as a result of the negligence and carelessness of . . . said City and County" in maintaining and repairing the sewer, his "merchandise . . . was damaged," and sought recovery of the cost of the damaged merchandise and his expenses in cleaning the premises.

The evidence conflicts as to the city's actions prior to and at the time of the break. The city's records indicated that on December 3, 1954, a year earlier, seepage occurred at 4546 Third Street and that the city inspected the sewer and found it to be functioning. The records, however, do not show whether the seepage came from the sewer; the oral testimony of Benjamin Benas, Superintendent of the Bureau of Sewer Repair and Sewage Treatment at that time, indicates that the source was unknown. The records further show that on the

evening of December 18, 1955, the sewage department received a call from a water department gate man to the effect that there was something wrong with the Third Street sewer in the vicinity of the LaSalle Market. The city's chronological report, prepared after respondent filed his complaint, states: "[A]bout 8:49 on Sunday, December 18, 1955, a call was given to Flushing Crew. Main sewer broken on Third Street between McKinnon and LaSalle Avenues. Mr. Bernard Crotty, General Foreman, was on the job and he decided to wait until Monday morning, December 19, 1955 to make a more complete examination." Yet another report filed by Mr. Crotty stated: "Call to watchman from Water Department. Water coming up through street from corp ditch. T. Lee, sewer cleaner on job. B. Crotty, general foreman. Manholes at LaSalle and McKinnon both functioning o.k."

Superintendent Benas attempted to reconcile the two reports by saying that both could be correct; that evidently on December 18th when the crew inspected it, "the sewer was . . . functioning," and, although they reported that the main sewer was broken "[t]hey weren't sure," "[e]ven though that was the report." He indicated that the procedure for finding and removing obstructions consisted of "rodding" but testified that the crew did not rod in this instance, presumably because the person on duty considered it unnecessary. In any event, by 8 o'clock the next morning the street had buckled, respondent's property had been flooded, and the crew found a break in the sewer.

Appellant's contention that the evidence fails to sustain the verdict rests upon two postulates: first, that the evidence does not support a finding that the city was negligent, and, second, that it does not establish the negligence, if any, proximately caused the loss.

 As to the first point, sufficient evidence sustained the jury's implied finding of the city's negligence. When the flushing crew went out to inspect the sewer on the night of December 18th, the normal procedure called for the opening of the manholes "to see where" the sewage "is flowing," as the "first step." The next step entailed rodding the sewer in order to locate, and, if possible, dislodge, the obstruction. Apparently the crew opened the manholes. The jury evidently concluded, however, that the crew did not rod the sewer.

Sufficient evidence supported such a finding. General Foreman Crotty testified that after he had observed water coming up beneath the pavement and the curb in the vicinity of the

market, he sent a flushing crew, headed by sewer cleaner Lee, to reinspect the sewer. As we have pointed out, a conflict of evidence throws doubt upon whether or not the crew did rod the sewer. The records of the city attest that Lee reported that he had rodded the sewer. Yet, despite the instructions given him to check on a stoppage, Lee could not recall whether or not he rodded the sewer at that time. General Foreman Crotty testified, however, that he did not believe Lee rodded the sewer. From these conflicting accounts the jury could have properly concluded that the crew did not rod on December 18th, and sufficient evidence would support such a conclusion.

Nor can we accept appellant's second contention that the record compels the conclusion, as a matter of law, that the failure to rod could not have been a proximate cause of the loss. Appellant declares that the "sewer break was found the next morning to be 150 feet away from either manhole, and . . . that under those circumstances the only recourse was to excavate" and that "the flooding could not have been averted" even "[h]ad the sewer been rodded that night. . . ." But the record does not compel any such conclusion.

Assistant Superintendent Murphy testified that at 8 a.m. on December 19th he arrived at the Third Street scene of trouble and that "[t]hey were trying to determine, as far as I know, if there was anything wrong with the sewer . . . [by] various means, instant rods, wooden rods, flexible cable. . . ." At that time "they used wooden rods. . . ." He was "pretty sure" they also used a flexible cable. The flexible cable went into the sewer "about 150 feet. . . ." According to appellant the use of rods on the previous evening could not have affected the break which, the next morning, the crew found to be 150 feet from the manholes.

Yet appellant's own witness, Benas, in his deposition, testified: "Normally the first step is to rod the sewer . . . in an attempt to relieve the stoppage." As we have stated, Murphy testified that the next morning the crew made use of "various means," including instant rods, wooden rods and flexible cable, to locate and relieve the stoppage. Substantial evidence sustains the jury's implied finding that the city failed adequately to undertake any such measures the previous evening. The jury could properly have concluded that this failure acted as a contributing cause to the loss; that the detection of the difficulty that night would have been followed by the stated "various means" of correction.

The jury could properly infer that the failure of the city to

rod, and the consequent failure to discover or remove an obstruction, could have caused the break. In the analogous clogging of a sewer in *Kramer* v. *City of Los Angeles* (1905), 147 Cal. 668 [82 P. 334], the court tested the adequacy of findings to sustain, in part, the plaintiff's claim "That the city was negligent in allowing the outlet of the conduit to be partially clogged and stopped up with debris so as to impede the passage of the water, thereby increasing the pressure upon that portion of the pipe underneath his building." (Pp. 676-677 [147 Cal.].) In this connection it noted: "It is conceded by all the witnesses in the case that the clogging of this outlet would throw a pressure upon the pipe on plaintiff's premises which it was not constructed to withstand, and the fact that it broke when the first storm came would be some evidence of itself that the outlet was then clogged and impeded." (P. 678 [147 Cal.].) While "all the witnesses" in the instant case did not concede that a clogging would throw pressure upon the sewer and thereby serve as a proximate cause of the break, we cannot hold as a matter of law that the jury could not have so inferred.

As stated in *Bady* v. *Detwiler* (1954), 127 Cal.App. 2d 321, 336 [273 P.2d 941], "Want of proximate cause does not exist as a matter of law unless the only reasonable hypothesis is that such want exists; reasonable or sensible men could have drawn that conclusion and none other. Where there are differences that may be drawn, one for and one against, the one against will be followed." We cannot pontificate that the *only* reasonable hypothesis is that the failure to rod, and the related failure to discover or remove an obstruction, could not have been a proximate cause of the loss. Indeed, a perfectly sound hypothesis could be that such failure, because of subsequent unremedied clogging, did contribute to the break.

Moreover, the city fails to show that such procedures *the night before* would not have reduced, relieved or even corrected the defect. The city fails to show that rodding *the night before* would not have removed the obstruction. The condition and extent of the break the next day did not compel the jury, in the absence of any contrary showing by the city, to conclude that the use of the normal procedures for detection and correction would have been ineffective.

If we conclude, then, that the evidence sustained an implied finding of general negligence and proximate causation, we must next resolve a more difficult and crucial problem: the

applicability of the Public Liability Act. As we shall point out we have concluded that the act governs the situation; that instructions should have been rendered pursuant to it and that the failure to give such instructions worked prejudice to appellant.

There can be little doubt that the maintenance of sewers basically affects the public health and, as such, constitutes a governmental function. As this court stated in *Miller* v. *City & County of San Francisco* (1960) 187 Cal.App.2d 480 [9 Cal.Rptr. 767] the "[o]peration of a sewer is a governmental function. [Citing cases.]" (P. 483.) Unless, therefore, appellant can recover under the provisions of the Public Liability Act, he has no recourse against the city.

■ The Public Liability Act (Gov. Code, § 53050 et seq.) imposes special conditions for the liability of a city, county, or school district. It provides that such an agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the person authorized to remedy the condition had knowledge or notice of the defective condition and for a reasonable time thereafter failed to remedy the condition or take action reasonably necessary to protect the public against that condition.

We find no decisions that remove the instant case from this special rule. The recent decision of *Muskopf* v. *Corning Hospital Dist.* (1961), 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], does not apply to the Public Liability Act, an enactment of the Legislature. Respondent's cases of *Ambrosini* v. *Alisal Sanitary Dist.* (1957), 154 Cal.App.2d 720 [317 P.2d 33], and *Mulloy* v. *Sharp Park Sanitary Dist.* (1958), 164 Cal.App.2d 438 [330 P.2d 441], pertain to the liability of a sanitary district, not that of a city. The Public Liability Act itself specifically defines its coverage: Section 53050 reads in part, "(c) 'Local agency' means city, county, or school district." Consequently, the terms of the act demonstrate that it does not apply to the sanitary district which was involved in *Ambrosini* and *Mulloy*. By the same token the act does not apply to other cases cited by respondent which involve forms of governmental districts other than the city, county, or school district. We must conclude that the act governs the instant case, and that, in the words of *Bauman* v. *San Francisco* (1940), 42 Cal.App.2d 144 [108 P.2d 989], "an unqualified instruction that the city is liable for the general negligence of its employees would clearly be error. , . ," (P. 158.)

We must hold, too, that the failure to give the instruction pursuant to the Public Liability Act effected prejudice against appellant. While the jury might have found the evidence sufficient to meet the standards of the act, we cannot conjecture that the jury did so. The recital of the facts set forth *supra* shows that the elements of the city's liability, pursuant to the act, might have been present. Yet the court gave no instruction upon the specific issues which the act formulates, and, particularly, no reference to the requirement that the city would not be liable unless the person having authority to remedy the condition had notice of it and for a reasonable time after acquiring knowledge failed to remedy the condition or take action reasonably necessary to protect the public against the condition. There can be no doubt of the importance of this specific issue; yet we cannot be sure that if an instruction had framed this precise question for resolution the jury would have concluded as it did.

The impact of the failure to instruct upon this issue becomes the more telling because the question is a factual one. As the court stated in *Bady* v. *Detwiler, supra,* 127 Cal.App.2d 321, 335, ''Whether a defective and dangerous condition existed for a sufficient length of time to constitute constructive notice, and also whether a reasonable time to remedy the condition or to take action reasonably necessary to protect the public against the condition existed are questions for the trier of fact to determine.'' (To the same effect: *Warren* v. *City of Los Angeles* (1949), 91 Cal.App.2d 678, 681 [205 P.2d 719]; *Anderson* v. *County of San Joaquin* (1952), 110 Cal.App.2d 703, 708 [244 P.2d 75].) The question whether the city did have a reasonable time in which to remedy the condition or to take action reasonably necessary to protect the public constituted a close one; the time interval from the notice to the city on the evening before until the discovery of the damage the next morning was relatively short, and the city strenuously contends that such an interval did not afford it the sufficient opportunity for the action provided by the statute. The exact issue was not presented to the jury. Although we may find sufficient evidentiary support for implied findings of negligence and proximate causation, we cannot imply a finding upon an issue which should have been, but was not, framed for the jury's resolution.

In the analogous case of *Barrett* v, *City of San Jose* (1958),

161 Cal.App.2d 40 [325 P.2d 1026], the appellate court faced a situation in which the trial court both instructed the jury as to negligence, based upon the liability of defendant in its proprietary capacity, as well as liability of defendant in its governmental capacity under the Public Liability Act. Yet, as the court pointed out, the issue as to whether the defendant acted in its proprietary or governmental capacity constituted one of law and should not have been presented to the jury. Since under the erroneous instructions the jury had been confronted with both the theory of negligence as well as that of liability under the act, the court held the error prejudicial. Speaking through Justice Draper, the court stated: "Under the instructions, however, the jury could have based its verdict upon a finding of negligent acts or omissions of individual employees, as distinguished from the more limited liability prescribed by the Public Liability Act. If the record contains any substantial evidence of general negligence, as distinguished from the acts or omissions specified in the Public Liability Act, we cannot tell which theory the jury followed, and must hold the erroneous instruction to be prejudicial." (P. 43 [161 Cal.App.2d].)

The conclusion of *Barrett* applies here: "Under this and other evidence introduced by plaintiff, the jury could well have found that the injury resulted from failure of the lifeguards to perform their assigned duties, on this one occasion, rather than from a dangerous condition. Thus we cannot say that the erroneous instruction was without prejudice to defendant." (P. 43 [161 Cal.App.2d].)

While the record may support implied findings of negligence and causation, and while the elements of the city's liability may have been established, we are unable to say that the failure to instruct pursuant to the Public Liability Act did not work prejudicial error. We do not know upon what theory the jury based its verdict.

We reverse the judgment and remand the cause for new trial. The appeal from the order denying appellant's motion for judgment notwithstanding the verdict is dismissed. Each party to bear own costs on appeal.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied July 17, 1961.