[Civ. No. 17706.   First Dist., Div. Two.   Oct. 28, 1957.]

WES AMBROSINI et al., Respondents, v. ALISAL SANI-
TARY DISTRICT (a Corporation), Appellant.

Rosendale, Thomas & Muller and Edson G. Thomas for Appellant.

J. T. Harrington for Respondents.

KAUFMAN, P. J.—Plaintiffs filed this action for damages to a celery crop grown on land owned by the plaintiff Ferrasci under a contract with the plaintiff Ambrosini, on the counts of nuisance and inverse condemnation, alleging that the damage was due to the overflow of a sewer outfall line owned by the defendant, a public corporation, organized pursuant to Health and Safety Code, sections 6400 et seq. The defendant appeals from the judgment on a jury verdict rendered in favor of the plaintiffs on both counts, and assigns as error the order of the trial court overruling defendant's demurrer, the orders denying defendant's motion for a nonsuit, motion for a directed verdict, and motion for a judgment notwithstanding the verdict, as well as certain alleged errors in the instructions.

The facts, viewed most favorably to the plaintiffs, are as follows: Plaintiffs were the owners of a field of celery bordering on the Salinas-Monterey Highway and adjacent to a portion of the sewage outfall line installed, maintained and operated by the defendant district. The outfall line was constructed in 1941 along with the defendant's sewage disposal plant. The plant was designed for a daily flow of 1.1 million gallons. The normal ''dry-flow'' of sewage through the plant

and into the outfall line was approximately 750,000 to 1,000,000 gallons per day with the flow varying in a day from 100,000 gallons to 1.5 million gallons. The sewage enters the outfall line after treatment at the plant, is carried through a concrete pipe line 18 inches in diameter, and discharged into the Salinas River at a point four miles from the plant. As originally constructed, the outfall line contained four pressure manholes which made it impossible for any sewage to escape from the outfall line through a manhole. In the fall of 1955, due to the growth of the population in the district and the increased flow of sewage in the outfall line which reduced the capacity of the pipe, the engineers of the defendant district recommended that the line be cleaned out by the installation of additional manholes. Fourteen additional nonpressure manholes were completed on December 2, 1955, and left unsealed, due to the cleaning operations. Manhole Number 12 which is located directly opposite plaintiff's celery field was one of the 14 nonpressure manholes constructed in 1955. There is also some evidence that the defendant district was in a strained financial condition at the time of the 1955 modifications.

The 1941 plans and specifications for the outfall line were prepared for a river flood level of elevation 46 feet. At the disposal plant, the elevation of the outfall line is 44 feet, but drops to 37 feet at the discharge point. The elevation of Manhole Number 12 is 43.02 feet.

During the month of December, 1955, the rainfall in the Salinas area was as follows:

| | |
|---|---|
| December 1— .37 inches | December 18— .04 inches |
| December 2— .15 inches | December 19— .44 inches |
| December 3— a trace | December 20— .01 inches |
| December 4— .02 inches | December 21— .03 inches |
| December 5— .09 inches | December 22—1.19 inches |
| December 6— .80 inches | December 23—2.34 inches |
| December 7— none | December 24— .45 inches |
| December 8— .50 inches | December 25— .02 inches |
| December 9— .04 inches | December 26— .50 inches |
| December 10-14—none | December 27-29—none |
| December 15-17—a trace | December 30—1.78 inches |

The monthly average was 8.96 inches; the monthly average from 1872-1954 for the month of December was 2.56 inches. On December 24, 1955, the plaintiffs' celery crop was mature and ready for harvest. Between 10 a. m. and 12 noon of that day, the plaintiff, Ferrasci, looked out and saw water at a

rate he estimated to be 300 to 500 gallons per minute coming out of Manhole Number 12 and flowing to the side of the road and into the field of celery. He also saw water flowing down the side of the road from the direction of Salinas. He telephoned the defendant district and was told someone would come right away. By 1 p. m. that afternoon when the plaintiff again went to the manhole, no one had arrived, and the water was being forced out to a height of 5-6 inches, and was up to the white line in the middle of the highway. By 3 p. m. of December 24, 1955, a PGE employee observed water still coming from the manhole, and personnel of the defendant district at the site of the manhole weighting down the manhole covers with tubs of sand and "doing a very good job under the circumstances" but there "was just so much water that they couldn't handle it at all." By about 4:30 p. m. of December 25, no more water was coming from the manhole. Two other witnesses testified that on December 24 they saw the water being discharged from Manhole Number 12 at a rate of 1,000 gallons or more per minute, and flooding the celery field. On December 24-25 about 4½ million gallons of water were going into the outfall line until it was plugged, due to the infiltration of storm waters which exceeded the designed capacity of the plant. As a result of the inundation of the plaintiffs' celery field with sewage water, the entire field was placed under a quarantine by an Inspector of the State of California pursuant to Administrative Code, title 17, section 7899.

Although the defendant assigns six separate grounds of error on appeal, the main questions to be determined are:

(1) Is the defendant district subject to suit?

(2) Did the plaintiffs' first amended complaint set forth a cause of action in nuisance and inverse condemnation?

(3) Were there any errors in the trial court's rulings on the defendant's motions and in the instructions to the jury?

As to the first issue, it is defendant's contention that it is a public corporation as distinct from a municipal corporation, and as such is a governmental agency of the state not liable in fact except under the Public Liability Act, Government Code, sections 53050-53056. Defendant relies on a quotation from *In re Werner*, 129 Cal. 567 [62 P. 97], to the effect that a sanitary district is not a municipal corporation but a public corporation. The distinction in the Werner case, however, was made to invalidate a penal ordinance passed by a sanitary district. Defendant then goes on to argue that

as it is not a municipal corporation it is a governmental agency like irrigation districts, relying on *Western Assur. Co. v. San Joaquin Drainage Dist.*, 72 Cal.App. 68 [237 P. 59], cases cited at 76-77. Irrigation districts are, by the statute which authorizes their creation, declared to be governmental agencies of the state. (Wat. Code, § 20570.)

Defendant district is organized pursuant to the Sanitary District Act of 1923, Health and Safety Code, sections 6400 to 6917, which provide that the district may make and enforce all necessary and proper regulations for the removal of garbage, the cleanliness of roads and streets and all other sanitary purposes not in conflict with the laws of this state (§ 6521.) Under section 6523, violation of district orders and regulations are misdemeanors. The district attorney of the county is required to represent a sanitary district (§ 6492; 18 O.A.G. 99.) Section 6512 sets forth the general powers of the district as follows: "It may acquire, construct, reconstruct, alter, enlarge, lay, renew, replace, maintain, and operate such garbage dump sites and garbage collection and disposal systems, sewers, drains, septic tanks, and sewerage collection, outfall, treatment works and other sanitary disposal systems, and storm water drains and storm water collection, outfall and disposal systems, as in the judgment of the board shall be necessary and proper, and in the performance of these functions, either in or out of the district, it may join with any county or municipality or any other district or governmental agency.

"Before any garbage dump shall be established the location shall first be approved by the county health officer, and in addition, if the location is within two miles of any city the consent of the governing body of the city shall first be secured." A sanitary district may also acquire real and personal property (§ 6514), make contracts (§ 6515), employ and pay necessary agents and assistants (§ 6517), sue and be sued in its own name (§ 6511), issue and refund bonds, make tax assessments (§§ 6654-6790), and do many other things specifically enumerated as well as "any act necessary and proper to the complete exercise and effect of any of its powers, or for the purposes for which it is formed." (§ 6522.) The district is governed by an elective board (§§ 6480-6499) and organized within a county (§ 6420). For some purposes, a sanitary district is analogous to an irrigation district (*La Mesa Homes Co. v. Le Mesa etc. Irr. Dist.*, 173 Cal. 121 [159 P. 593]); for purposes of tax exemption, sanitary districts are included

within the broad definition of municipal corporations of section 1 of article XIII of the state Constitution (*Rock Creek Water Dist.* v. *County of Calaveras,* 29 Cal.2d 7 [172 P.2d 863]).

In the above case the court in listing the technical requirements of a municipal corporation stated at page 11: "An irrigation district probably comes nearer than any other of the subordinate public corporations of the state to meeting the technical requirements defining a municipal corporation. It has its own directors and officers, conducts its own elections, can sue and be sued in its corporate name, issues bonds, levies, collects, and disburses its own revenues, acquires and holds property, both real and personal, in its own name, and in the management of its internal affairs is entirely independent of the county and state, aside from the control of general laws." The powers of a sanitary district as listed above would appear to be closely analogous to the above requirements; the powers set forth under section 6512 include both "governmental" and "proprietary" powers, so that we may safely conclude that the rules of tort liability as applicable to the defendant district are analogous to the rules applicable to municipal corporations. (Even if we were to conclude that the defendant was more analogous to a state agency, in this state the distinction between governmental and proprietary functions is apparently applicable to the state (*Guidi* v. *State,* 41 Cal.2d 623 [262 P.2d 3]). Although plaintiffs' first amended complaint states that action was instituted under the Public Liability Act of 1923, Government Code, section 53053, it is not necessary to consider in great detail defendant's arguments as to the act, since the liability for acts which constitute a direct damage to property existed at common law as an exception to the general rule of sovereign immunity. (*Reardon* v. *San Francisco,* 66 Cal. 492 [6 P. 317, 56 Am.Rep. 109]; Prosser on Torts, 2d Edition, Vol. 18, p. 779; McQuillin, Municipal Corporations, 3d Edition, Vol. 18, §§ 53.122, 53.123, 53.124.)

As to the first cause of action, plaintiffs' first amended complaint, so far as relevant, alleges: "That as a proximate result of the carelessness and negligence of said defendant, in designing, maintaining and operating said sewage disposal line, the sewage waters originating at the sewage disposal plant of said defendant, and intended to be discharged into said Salinas River, did on the 24th, 25th, and 26th days of December, 1955, escape from, and were discharged from, a

manhole located in said sewage pipe. line, adjacent to the aforesaid real property, and inundated and flooded with sewage water, the aforementioned crop of celery.'' The verified claim, Exhibit ''A'' attached thereto alleges: ''That on the 24, 25, and 26 days of December, 1955, and subsequent thereto, sewage being transported and carried from the plant of Alisal Sanitary District by means of an outfall line leading to the Salinas River, escaped from said line and inundated the lands upon which the foregoing described crop of celery was growing, and as a result of said inundation, said crop of celery was totally destroyed and rendered unfit for human consumption.

''. . . That the inundation of said celery crop by sewage was proximately caused by the carelessness and negligence of Alisal Sanitary District and by the carelessness and negligence of the Board of said District, and the Superintendent in charge of the operations of said District.

''. . . That said crop of celery was totally destroyed to the damage of claiments in the sum of $14,916.00 .

''. . . This claim is made under the provisions of Section 14 of Article I of the Constitution of the State of California, which prohibits the damaging of private property for public use without payment of just compensation, and under the provisions of California Government Code, Sections 1982 and 53053.'' Defendant contends that where property is used entirely for governmental purposes there is no liability for nuisance but only liability for negligence. ▮ However, in this state, a municipality may be held liable for creating and maintaining a nuisance notwithstanding a governmental activity is involved. (*Phillips* v. *City of Pasadena,* 27 Cal.2d 104 [162 P.2d 625] ; *Stanford* v. *San Francisco,* 111 Cal. 198 [43 P. 605] ; *Reardon* v. *San Francisco,* 66 Cal. 492 [6 P. 317, . 56 Am.Rep. 109] ; *Bloom* v. *San Francisco,* 64 Cal. 503 [3 P. 129] ; *Dick* v. *City of Los Angeles,* 34 Cal.App. 724 [168 P. 703].)

The question, therefore, becomes whether defendant's acts here constitute a nuisance, which is defined in Civil Code, section 3479, as: ''Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin or any public park, square, street, or highway, is a nuisance.''

■ Defendant, relying on Civil Code, section 3482, maintains that nothing which is done under express statutory authorization is a nuisance. However, that code section is not applicable here, as it cannot be said that the statute authorizes the construction of a defective outfall line. Defendant also seeks to bring this case within the rule of *Womar* v. *City of Long Beach,* 45 Cal.App.2d 643 [114 P.2d 704], where the injury was due to a "set of unfortunate natural circumstances for which the law provides no remedy."

■ However, whether the injury was due to the acts of the defendant when it made the 1955 changes in the outfall line, as contended by the plaintiff, or due to the unusually heavy rainfall, as contended by the defendant, was a matter of fact properly left to the jury and resolved in favor of the plaintiffs here. We cannot disturb the jury's finding on appeal.

■ There is also no merit in defendant's contention that a single act is not a nuisance. Prosser states, ". . . the duration or recurrence of the interference is merely one—and not necessarily a conclusive—factor in determining whether the damage is so substantial as to amount to a nuisance," op. cit., page 397, note 90. Recovery for the unlawful destruction of crops was allowed in *Dick* v. *City of Los Angeles,* 34 Cal.App. 724 [168 P. 703]. In *Vater* v. *County of Glenn,* (Cal.App.) 309 P.2d 844, relied upon by the defendant, a hearing was granted by the Supreme Court and nothing said in that case may be regarded as a binding precedent. (*Ponce* v. *Marr,* 47 Cal.2d 159 [301 P.2d 837].)

■ As to the second cause of action, to which defendant demurred specially and generally, plaintiffs' amended complaint alleges as follows: "That the concrete pipe line referred to in Paragraph III of said First Cause of Action, which said paragraph is incorporated herein by reference, was constructed for a public purpose, to-wit: for the purpose of carrying and transporting sewage and sewage waters from the sewage disposal plant, owned, operated and maintained by said defendant, to the Salinas River.

". . . That as a direct and necessary result of the plan, design, maintenance and operation of said concrete pipe line, sewage and sewage water originating at the sewage disposal plant of said defendant, in said Alisal District, and intended to be carried and transported through the aforesaid concrete pipe line and finally discharged into the Salinas River, did, on the 24th, 25th and 26th days of December, 1955, escape from said concrete pipe line and were discharged from a man-

hole located therein and situated adjacent to the real property hereinbefore described; that said sewage and sewage water inundated and flooded the land upon which plaintiffs' said crop of celery was growing.

". . . That as a proximate result of the inundation and flooding of said parcel of land with sewage and sewage waters on the said 24th, 25th and 26th days of December, 1955, the said crop of celery was totally destroyed and lost to plaintiffs; that said crop was reasonably worth the sum of Fourteen Thousand Nine Hundred Sixteen Dollars ($14,916.00).

". . . That no compensation has been paid or provided for plaintiffs for the damaging of said crop and that the action of defendant in flooding and inundating said land upon which said crop of celery was growing, without paying compensation therefor is a violation of provision of Article I, Section 14 of the Constitution of the State of California.

". . . That by reason of the flooding and inundation of the land upon which said crop of celery was growing, plaintiffs have been damaged in the sum of Fourteen Thousand Nine Hundred Sixteen DOLLARS ($14,916.00), no part of which has been paid."

We think these allegations clearly bring this case within article I, section 14, of the state Constitution. Recovery on grounds of inverse condemnation against irrigation districts, which unlike defendant here are governmental agencies for damage done by seepage of water was permitted in *Tormey* v. *Anderson-Cottonwood Irr. Dist.*, 53 Cal.App. 559 [200 P. 814]; *Hume* v. *Fresno Irr. Dist.*, 21 Cal.App.2d 348 [69 P.2d 483]; *Powers Farms* v. *Consolidated Irr. Dist.*, 19 Cal.2d 123 [119 P.2d 717]. Defendant contends here that the plaintiffs' property was not taken for a "public use." In this regard, in reversing the trial court for sustaining a demurrer, our Supreme Court said, in *House* v. *Los Angeles County Flood Control Dist.*, 25 Cal.2d 384 [153 P.2d 950], in a concurring opinion at 395-397: "Defendant is a public corporation created by an act of the Legislature, known as the 'Los Angeles Flood Control Act' (Stats. 1915, p. 1502, as amended; Deering's Gen. Laws, Act 4463), to protect lands, including harbors and public highways from flood waters and to conserve the flood waters for useful purposes. (§ 2 of the act; *Los Angeles County Flood Control Dist.* v. *Hamilton*, 177 Cal. 119, 126 [169 P. 1028].) These purposes are essentially public although beneficial to many private individuals (see *Los Angeles* v. *Los Angeles County Flood Control Dist.*, 11

Cal.2d 395, 404 [80 P.2d 479]; *Los Angeles County Flood Control Dist.* v. *Hamilton, supra,* p. 124; *Cheseboro* v. *Los Angeles County Flood Control Dist.,* 306 U.S. 459, 465 [59 S.Ct. 622, 83 L.Ed. 921]; see 29 C.J.S. 852; 70 A.L.R. 1274), and the Legislature properly vested defendant with the power of eminent domain. (§§ 2(6), 16, 16½ of the act.) Property taken or damaged for defendant's purposes is therefore 'taken or damaged for public use' in the sense of the constitutional provision. In the absence of contract the right to discharge water onto another's property may be based on property law or on the police power of the state. (*Archer* v. *City of Los Angeles, supra,* at p. 24 [19 Cal.2d 19 (119 P.2d 1)].) If the discharging of water incident to the construction of a public improvement cannot be sustained as the exercise of a right, it is a taking or damaging within the meaning of the constitutional provision of the property injured. (*Powers Farms* v. *Consolidated Irr. Dist.,* 19 Cal.2d 123, 126 [119 P.2d 717]; *Pacific Seaside Home* v. *Newbert P. Dist.,* 190 Cal. 544 [213 P. 967]; *Elliott* v. *County of Los Angeles,* 183 Cal. 472, 475 [191 P. 899]; *Smith* v. *City of Los Angeles,* 66 Cal.App.2d 562 [153 P.2d 69]; *Conniff* v. *San Francisco,* 67 Cal. 45, 48 [7 P. 41]; *Jacobs* v. *United States,* 290 U.S. 13, 16 [54 S.Ct. 26, 78 L.Ed. 142]; *United States* v. *Cress,* 243 U.S. 316, 327 [37 S.Ct. 380, 61 L.Ed. 746]; *United States* v. *Lynah,* 188 U.S. 445, 470 [23 S.Ct. 349, 47 L.Ed. 539]; *Hurley* v. *Kincaid,* 285 U.S. 95, 104 [52 S.Ct. 267, 76 L.Ed. 637]; *Pumpelly* v. *Green Bay etc. Co.,* 13 Wall. (U.S.) 166, 177 [20 L.Ed. 557]; *Eaton* v. *Boston etc. Railroad,* 51 N.H. 504 [12 Am.Rep. 147]; see *Franklin* v. *United States,* 101 F.2d 459; 128 A.L.R. 1195.) The destruction or damaging of property is sufficiently connected with 'public use' as required by the Constitution, if the injury is a result of dangers inherent in the construction of the public improvement as distinguished from dangers arising from the negligent operation of the improvement. The construction of the public improvement is a deliberate action of the state or its agency in furtherance of public purposes. In erecting a structure that is inherently dangerous to private property, the state or its agency undertakes by virtue of the constitutional provision to compensate property owners for injury to their property arising from the inherent dangers of the public improvement or originating 'from the wrongful plan or character of the work.' (*Perkins* v. *Blauth,* 163 Cal. 782, 789 [127 P. 50]; *Kaufman* v. *Tomich,* 208 Cal. 19, 25

[280 P. 130] ; *Powers Farms* v. *Consolidated Irr. Dist., supra,*
p. 127; *Reardon* v. *San Francisco,* 66 Cal. 492, 505 [6 P. 317,
56 Am. Rep. 109].) This liability is independent of intention
or negligence on the part of the governmental agency. (*Reardon* v. *San Francisco, supra,* at p. 505; *Tormey* v. *Anderson-Cottonwood Irr. Dist.,* 53 Cal.App. 559 [200 P. 814], opinion
of Supreme Court denying a hearing, p. 568; *Powers Farms*
v. *Consolidated Irr. Dist., supra,* p. 126; *Mitchell* v. *City of
Santa Barbara,* 48 Cal.App.2d 568, 572 [120 P.2d 131];
*Morrison* v. *Clackamas County,* 141 Ore. 564 [18 P.2d 814];
*Hooker* v. *Farmers' Irr. Dist.,* 272 F. 600; see 10 Cal.Jur. 337;
69 A.L.R. 1231.) The decisive consideration is the effect of
the public improvement on the property and whether the
owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking.
It is irrelevant whether or not the injury to the property is
accompanied by a corresponding benefit to the public purpose
to which the improvement is dedicated, since the measure of
liability is not the benefit derived from the property, but the
loss to the owner. (*Rose* v. *State of California,* 19 Cal.2d 713,
737 [123 P.2d 505]; *City of Stockton* v. *Vote,* 76 Cal.App.
369, 404 [244 P. 609]; *Santa Ana* v. *Harlin,* 99 Cal. 538, 542
[34 P. 224]; *City of Redding* v. *Diestelhorst,* 15 Cal.App.2d
184, 193 [59 P.2d 177]; *City of Pasadena* v. *Union Trust Co.,*
138 Cal.App. 21, 25 [31 P.2d 463]; *Temescal Water Co.,* v.
*Marvin,* 121 Cal.App. 512, 521 [9 P.2d 335]; see 18 Am.Jur.,
Eminent Domain § 240 et seq.) Defendant, therefore, cannot
rely on the fact that the injury to the property was caused,
not by a deliberate appropriation thereof, but by a collapse
of defendant's structures. It is of no avail to defendant that
the invasion of plaintiff's property in the manner in which
it happened was not foreseeable. The provision in article I,
section 14, that the compensation for the taking or damaging
of property shall be paid in advance protects the interests
of the property-owner where advance payment is feasible
under the circumstances; liability is not avoided simply because such payment is not feasible. The public purpose was
not the mere construction of the improvement but the protection that it would afford against floods. The dangers inherent in the improvement would cause injury only when
storms put the flood control system to a test. The injury sustained by plaintiff was therefore not too remote.'' In *Bauer*
v. *County of Ventura,* 45 Cal.2d 276 [289 P.2d 1], the court
said at 284: '' 'Public use' within the meaning of section 14

is defined as a use which concerns the whole community or promotes the general interest in its relation to any legitimate object of government. (*Gilmer* v. *Lime Point, supra,* 18 Cal. 229.) To make a use public in character, a duty must fall on the person or corporation holding the property appropriated by eminent domain to furnish the public with the use intended and the public must be entitled to use or enjoy the property taken. (*Gravelly Ford Canal Co.* v. *Pope & Talbot Land Co.,* 36 Cal.App. 556 [178 P. 150] ; see *Thayer* v. *California Dev. Co.,* 164 Cal. 117 [128 P. 21].) Hence it is clear that the ordinary taking of private property for the purpose of constructing storm drainage systems is a taking for a public use. The reasons for such a taking are obviously to provide adequate normal drainage, to control flood waters and to provide irrigation waters. The public becomes principally entitled to the use and enjoyment of the private property taken for such purposes.''

Defendant further contends that the damage here was due at most to negligence, and not deliberate. However, the changes made in the outfall line are deliberate and here as in *Bauer* v. *County of Ventura, supra,* 45 Cal.2d 276, the damage resulted from a failure to appreciate the probability that the outfall line, functioning as deliberately conceived, for a river flood level of 47 feet, and as altered in 1955 would result in some damage to private property. *Neff* v. *Imperial Irr. Dist.,* 142 Cal.App.2d 755 [299 P.2d 359], relied upon by the defendant, is distinguishable, as there the damage was not a natural and necessary consequence of the defendant's act. Here the evidence sustains plaintiffs' position and their right to recover on grounds of inverse condemnation is sustained by *Bauer* v. *County of Ventura, supra,* and *Ward Concrete Co.* v. *Los Angeles County Flood Control Dist.,* 149 Cal.App. 2d 840 [309 P.2d 546].

We do not think the trial court erred in denying defendant's motions, nor can we find in the instructions given to the jury any errors of a harmful or prejudicial nature.

In view of the foregoing we conclude that the judgment finds ample support in the record before us.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1957.