EDMUND G. BROWN JR. Attorney General DANIEL G. STONE Deputy Attorney General
THE RENTAL HOUSING OWNERS' ASSOCIATION OF SOUTHERN ALAMEDA COUNTY and MARC CRAWFORD, as Relators, have requested leave to sue in quo warranto upon the following question:
Does the doctrine of incompatible public offices preclude Dennis Waespi from simultaneously serving on both the board of directors of the Castro Valley Sanitary District and the board of directors of the Hayward Area Recreational and Park District?
 CONCLUSION
Whether the offices of director of the Castro Valley Sanitary District and director of the Hayward Area Recreational and Park District are incompatible, such that Dennis Waespi is precluded from simultaneously holding both offices, presents substantial questions of fact and law warranting judicial resolution. Accordingly, Relators' application for leave to sue is granted. *Page 2 
 ANALYSIS
In the General Election conducted on November 4, 2008, Dennis M. Waespi ("Defendant") was elected to serve as a director on the governing boards of two different local public agencies: the Castro Valley Sanitary District (CVSD), on which he had been serving continuously since 1999; and the Hayward Area Recreational and Park District (HARD), to which he was elected for the first time. Defendant took his oath of office and began serving his current four-year term on the CVSD board of directors on December 2, 2008, and he was sworn in and began serving his current four-year term on the HARD board of directors on December 8, 2008. From that latter date through the present, he has held both offices simultaneously.
The Rental Housing Owners' Association of Southern Alameda County (RHOASAC) and individual Marc Crawford (together, "Relators") allege that Mr. Waespi may not lawfully hold both offices at the same time, and they request permission, pursuant to Code of Civil Procedure section 803, to file an action to remove Defendant from his position as a CVSD director. RHOASAC is a non-profit corporation representing owners and managers of rental units in southern Alameda County, many of whom do business within the districts' boundaries, and Marc Crawford, a member of the RHOASAC board of directors, appears here in his capacity as an individual who resides and does business within the jurisdictional boundaries of CVSD and HARD.
Code of Civil Procedure section 803 provides, in pertinent part, that:
 An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state.
An action filed under the terms of this statute is known as a quo warranto action, and is the proper legal avenue for testing title to public office.[1] In determining whether to grant an application to file a quo warranto action, the Attorney General does not resolve the merits of the controversy, but rather decides (1) whether the application presents a substantial issue of fact or law requiring judicial resolution, and (2) whether granting the application would serve the overall public interest.[2] *Page 3 
Government Code section 1099, [3] enacted in 2005, codifies the common law rule against holding incompatible offices, [4] the essence of which is set forth in the opening sentence of section 1099(a):
 A public officer, including, but not limited to, an appointed or elected member of a governmental board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible.[5] *Page 4 
While section 1099 now governs the question of incompatible offices in California, [6] our construction and application of that statute are also guided by administrative and judicial interpretations developed under the common law.[7]
Section 1099 and established common law precedent teach that a person may not simultaneously hold two public offices if there is any significant clash of duties or loyalties between the offices; if the dual office holding would be improper for reasons of public policy; or if either office exercises a supervisory, auditing, or removal power over the other.[8] The prohibition applies only when each position is a "public office," not merely "a position of employment; "[9] and only in the "absence of statutes suggesting a contrary result."[10] When a person is found to be holding incompatible offices, she or he is deemed to have forfeited the first office upon accepting the second.[11] In the present case, this means that Defendant, if his two currently held positions were determined to be incompatible public offices, would be deemed to have forfeited the first office for which he took an oath — that is, his CVSD directorship.
Powers and Responsibilities
We begin with a brief summary of the powers and duties of the respective boards on which Mr. Waespi currently serves as a director.
As a recreation and park district, HARD is organized under the Recreation and Park District Law.[12] HARD's authority includes the power to organize and conduct community recreation programs, to establish systems of recreation facilities (including parks and open space), and to acquire, improve, and operate such facilities.[13] The HARD *Page 5 
board of directors may also sue and be sued, acquire real and personal property within or outside the district's boundaries, acquire property through eminent domain, borrow money, enter contracts, adopt ordinances, and enter joint powersagreements.[14] It may also enter cooperative agreements with other governmental bodies, [15] and may contract with other public agencies to provide facilities and programs.[16]
HARD's principal offices are located in Hayward, California, in the County of Alameda, and thirteen of its public buildings, parks, and facilities are located within CVSD's jurisdictional limits, which, in turn, lie entirely within HARD's broader geographical boundaries. CVSD is a supplier of sanitation services for these parks and other facilities, and HARD is a rate payer.[17]
CVSD's principal offices are in Castro Valley, California, also in the County of Alameda, and the district is organized under the Sanitary District Act of 1923.[18] CVSD's authority includes, among others, the power to sue and be sued;[19] to acquire, construct, maintain, and operate garbage collection and disposal systems, sewer systems, sewage treatment facilities, other sanitary disposal systems, storm drains, and water recycling and distribution systems;[20] to acquire property by purchase, gift, condemnation, or otherwise, and to lease and dispose of property;[21] to enter contracts;[22] to pay claims;[23] to compel *Page 6 
residents and property owners to connect their structures with the district's sewers and storm drains, and to use the district's garbage collection and disposal system;[24] to prescribe and collect charges for sanitation and sewerage services and facilities;[25] and to pass regulations andordinances.[26] CVSD's jurisdiction includes property and facilities owned, maintained, and/or operated by HARD.[27]
Are Both Positions Public Offices?
Our first task is to determine whether the two offices in question are "public offices" within the meaning of Government Code section 1099, and we readily find that each directorship is a public office for this purpose. In87 Ops.Cal.Atty.Gen. 142, 145 (2004), we described the test for finding a "public office" under the common law rule:
 For the purpose of the doctrine of incompatible public offices, a public office is a position in government (1) which is created or authorized by the Constitution or some law; (2) the tenure of which is continuing and *Page 7 
permanent, not occasional or temporary; (3) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state.[28]
The "sovereign powers" requirement, as we construe it, means that the position must involve significant and independent policy-making discretion.[29]
In previous opinions, we have found that both a recreation and park district director and a sanitation district director occupy public offices for purposes of the doctrine of incompatible offices, [30] and our brief recitation of the respective powers and duties of the HARD board and the CVSD board demonstrates the continued validity of those findings. Accordingly, we conclude that each of the two positions currently held by Mr. Waespi is a public office, and that the incompatibility rule therefore operates in these circumstances unless it has been expressly abrogated with respect to these two offices.
Are The Two Offices Incompatible?
The parties have cited no statute expressly permitting a single person to hold both offices here in question, and we know of no provision abrogating the incompatibility doctrine for thesepositions.[31] Hence, we examine whether there is any clash of interests here, such that a person holding both offices simultaneously might be rendered unable to effectively discharge his or her official duties in each post due to divided loyalties.
As we have noted on many occasions, the incompatibility rule does not require an actual occurrence of divided loyalties, but looks to whether the circumstances may reasonably be said to present a substantial latent tension between the two offices. And a single possible clash suffices: "Only one potential significant clash of duties or loyalties is necessary to make offices incompatible."[32] Nor does the incumbent's record or *Page 8 
reputation or integrity cure the problem.[33] Regardless of the motives or integrity of the office holder, he or she cannot hold two incompatible offices at once; for it is the nature of the offices, not of the individuals, that determines the rule's application. When two offices are inherently incompatible, an incumbent holding both "can only perform the duties of one office by neglecting to perform the duties of the other. It is not for him to say in a particular instance which he will perform and which he will not. The public has a right to know with certainty."[34]
Here, we think that the potential for such clashes is readily apparent given that CVSD's and HARD's jurisdictions overlap to a significant extent and given that a significant number of properties and facilities owned, maintained, and operated by HARD require the sanitation services of — and are subject to fees and assessments imposed and collected by — the sanitary district. We can imagine instances, for example, in which the HARD board of directors might dispute a CVSD fee or a proposed fee hike, or wish to negotiate a discounted rate; or when the two districts might enter into other contract negotiations; or when one district might wish to acquire property or facilities or easement rights from the other; or when the HARD board might dispute a particular sewage-connection requirement or challenge the propriety or amount of special fees imposed for a newly developed or proposed facility.[35]
HARD's position as a consumer of CVSD's services and as a CVSD rate payer thus creates a high likelihood that the two public agencies will, at least occasionally, be called upon to deal with each other in contexts where their interests will be divergent. In our view, the circumstances here are closely akin to cases in which we have found *Page 9 
incompatibility between water services agencies and agencies with which they have a supplier-customer relationship.[36]
Furthermore, we are informed that occasional concrete examples of such conflicting interests and divided loyalties have already arisen during Mr. Waespi's simultaneous tenure in both offices, requiring his recusal from a board's deliberations and votes.[37]
In light of these relationships, overlapping jurisdictions, and potential conflicts between the sanitary district and the recreational and park district, we find that the question whether Defendant Dennis Waespi is unlawfully holding the office of director of the Castro Valley Sanitary District presents substantial issues of fact and law requiring judicial resolution. We further conclude that Relators' filing of the proposed action in quo warranto would serve the overall public interest in ensuring that public officials avoid conflicting loyalties when performing their public duties.[38] Accordingly, Relators' application for leave to sue in quo warranto is GRANTED.
[1] See, e.g., 86 Ops.Cal.Atty.Gen. 205 (2003) (member of county board of supervisors);86 Ops.Cal.Atty.Gen. 194 (2003) (school district board member);85 Ops.Cal.Atty.Gen. 239 (2002) (community services district director);85 Ops.Cal.Atty.Gen. 90 (2002) (city council member);81 Ops.Cal.Atty.Gen. 304 (1999) (city police chief);76 Ops.Cal.Atty.Gen. 81 (1993) (water district director).
[2] 86 Ops.Cal.Atty.Gen. at 208-209;78 Ops.Cal.Atty.Gen. 352, 353 (1995).
[3] 2005 Stat. ch. 254, § 1.
[4] For a discussion of the common law rule, see, e.g., Peopleex rel. Chapman v. Rapsey, 16 Cal. 2d 636, 642 (1940); Peopleex rel. Deputy Sheriffs' Assn. v. Co. of Santa Clara,49 Cal. App. 4th 1471, 1481 (1996);81 Ops.Cal.Atty.Gen. 344, 345 (1998).
[5] In its entirety, Government Code section 1099 provides as follows:
 (a) A public officer, including, but not limited to, an appointed or elected member of a governmental board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible. Offices are incompatible when any of the following circumstances are present, unless simultaneous holding of the particular offices is compelled or expressly authorized by law:
 (1) Either of the offices may audit, overrule, remove members of, dismiss employees of, or exercise supervisory powers over the other office or body.
 (2) Based on the powers and jurisdiction of the offices, there is a possibility of a significant clash of duties or loyalties between the offices.
 (3) Public policy considerations make it improper for one person to hold both offices.
 (b) When two public offices are incompatible, a public officer shall be deemed to have forfeited the first office upon acceding to the second. This provision is enforceable pursuant to Section 803 of the Code of Civil Procedure.
 (c) This section does not apply to a position of employment, including a civil service position.
 (d) This section shall not apply to a governmental body that has only advisory powers.
 (e) For purposes of paragraph (1) of subdivision (a), a member of a multimember body holds an office that may audit, overrule, remove members of, dismiss employees of, or exercise supervisory powers over another office when the body has any of these powers over the other office or over a multimember body that includes that other office.
 (f) This section codifies the common law rule prohibiting an individual from holding incompatible public offices.
[6] 89 Ops.Cal.Atty.Gen. 152 (2006).
[7] In an uncodified portion of the 2005 legislation, the Legislature declared that section 1099 was "not intended to expand or contract the common law rule," and that judicial interpretations "shall be guided by judicial and administrative precedent concerning incompatible public offices developed under the common law." 2005 Stat. ch. 254, § 2.
[8] Govt. Code § 1099(a); see People ex re. Chapman v.Rapsey, 16 Cal. 2d 636; 81 Ops.Cal.Atty.Gen. at 345.
[9] Govt. Code § 1099(c); see58 Ops.Cal.Atty.Gen. 109, 111 (1975).
[10] 38 Ops.Cal.Atty.Gen. 113, 113 (1961); see Govt. Code § 1099(a); 81 Ops.Cal.Atty.Gen. at 345;78 Ops.Cal.Atty.Gen. 60, 62-63 (1995).
[11] Govt. Code § 1099(b); People ex rel. Chapman v.Rapsey, 16 Cal. 2d at 644; see 3 McQuillin, MunicipalCorporations (3d ed. 2001) § 1267 at 367.
[12] Pub. Res. Code §§ 5780-5791.7.
[13] Id. at § 5786.
[14] Id. at §§ 5786.1, 5786.3, 5786.5.
[15] Id. at § 5786.11.
[16] Id. at § 5786.13.
[17] HARD's website describes the district in the following terms:
 The Hayward Area Recreation Park District is an independent special use district providing park and recreation services for over 250,000 residents living within a 64 square-mile area which includes the City of Hayward, Castro Valley, San Lorenzo and the unincorporated Ashland, Cherryland and Fairview districts. The Park District, known locally as "H.A.R.D.", is the largest recreation district in the State of California. Since its creation in 1944, the District has provided residents with many beautiful facilities and parks, as well as hundreds of educational and recreational classes and programs. The mission of the Park District is improving the quality of life for citizens of all ages by providing a variety of recreational activities, special events, facilities and services that encourage life-long learning, fitness and fun. (http://www.haywardrec.org/)
[18] Health Saf. Code §§ 6400-6830;cf. §§ 4700, et seq. (county sanitation districts).
[19] Id. at § 6511.
[20] Id. at §§ 6512(a), 6518, 6518.5.
[21] Id. at §§ 6514, 6514.1.
[22] Id. at § 6515.
[23] Id. at § 6516.
[24] Id. at § 6520.
[25] Id. at § 6520.5.
[26] Id. at §§ 6521, 6491.3. See also, e.g., Home GardensSanitary Dist. v. City of Corona,96 Cal. App. 4th 87, 89-92 (2002); West Bay Sanitary Dist. v. Cityof East Palo Alto, 191 Cal. App. 3d 1507, 1510 (1987);Ambrosini v. Alisal Sanitary Dist.,154 Cal. App. 2d 720, 724-725 (1957).
[27] On its website, CVSD states that it "provides for the collection of wastewater and oversees the collection, and proper handling of solid waste from homes and businesses located in its 10-square-mile service area" (see http://www.cvsan.org), and describes itself as follows:
 The Castro Valley Sanitary District (CVSD) is a small public agency organized under the Health and Safety Code of the State of California. As a California Special District, CVSD has responsibility for the operation and maintenance of the sanitary sewer collection system within the unincorporated community of Castro Valley. The District also is in charge of the administration of a refuse collection franchise, the District's 25% interest in a wastewater treatment facility, implementation and administration of State and local mandated recycling programs, as well as District participation in sub-regional wastewater discharge and solid/hazardous waste management agencies. (http://www.cvsan.org/pages/main.)
[28] Id. (quoting 68 Ops.Cal.Atty.Gen. 337, 342 (1985)).
[29] 87 Ops.Cal.Atty.Gen. at 145 (citing, inter alia,82 Ops.Cal.Atty.Gen. 83, 84-86 (1999);78 Ops.Cal.Atty.Gen. 362 (1995); Neigel v. Super. Ct.,72 Cal. App. 3d 373 (1977)).
[30] Regarding recreation and park district directors,see 63 Ops.Cal.Atty.Gen. 710, 711 at n. 2 (1980). For sanitation district directors, see41 Ops.Cal.Atty.Gen. 98, 101 (1963).
[31] Cf. Pub. Res. Code § 5784(d) (service on municipal advisory council "shall not be considered an incompatible office with service as an elected member of a [recreation and park district] board of directors.")
[32] 85 Ops.Cal.Atty.Gen. 199, 200 (2002).
[33] See, e.g., 41 Ops.Cal.Atty.Gen. at 98, 99 (fact that an incumbent "may have acted in good faith and upon a legal opinion that the offices were compatible" is irrelevant; wrongful intent is not an element of the rule, and good faith is not a defense).
[34] People ex rel. Chapman v. Rapsey,16 Cal. 2d at 643.
[35] Defendant asserts that CVSD charges only flat rates for sewage and garbage services, that any rate increases are made "across the board," and that fee levels are determined based on objective studies by reputable consultants. He further states that CVSD decisions affecting HARD's interests constitute only a tiny fraction of CVSD's total operations, that they represent a miniscule proportion of CVSD's overall budget and revenue stream, and that he is careful to recuse himself whenever conflicts or potential conflicts arise. We have no reason to doubt these statements, and we emphasize that our conclusions do not impugn the integrity and good faith of Mr. Waespi or of the boards on which he serves. As we noted earlier, however, the doctrine of incompatible public offices does not purport to identify or to punish instances of actual wrongdoing; rather, its purpose is to eliminate situations that carry the potential for divided loyalties in a public office holder.
[36] See, e.g.,87 Ops.Cal.Atty.Gen. 153, 155-156 (2004) (water district; school district); 85 Ops.Cal.Atty.Gen. 60, 62 (2002) (same);75 Ops.Cal.Atty.Gen. 10, 14 (1992) (water district; city council). As we observed in 73 Ops.Cal.Atty.Gen. 183 at 186 (1990) (community service district; school district):
 [D]efendant, as a [community services district] director, is responsible for the fixing of rates for all users, including school districts, for prescribing different rates for different uses, and for assigning users into appropriate rate categories. In this regard, the exercise of his judgment and discretion as to the best interests of [the community services district] as a provider of services, and as to those of [the school district] as a ratepayer, is necessarily divided. Id. at 186.
[37] In one instance, CVSD attempted to collect from HARD an unpaid sewer connection fee associated with the construction of a snack bar at a baseball field, and HARD denied responsibility for the fee. (Eventually, that fee was paid by a school district.) In another, CVSD discovered that HARD had not paid its annual sewer service bills for several years because CVSD had inadvertently failed to send out invoices. When CVSD explained the problem and demanded payment, HARD argued that, as to some of those charges, too much time had elapsed between the services and the billing, and that HARD was therefore obligated to pay only a portion of the outstanding amount.
[38] As a general rule, we view the existence of a substantial question of fact or law as presenting a sufficient public purpose to warrant the granting of leave to sue, and we deny leave in those circumstances only in the presence of other overriding considerations. See, e.g.,80 Ops.Cal.Atty.Gen. 242, 247 (1997). No countervailing considerations are evident here. *Page 1